SUSAN S. HALL and THOMAS L. HUME, trading as
HALL & HUME, *vs.* CHARLES A. ECCLESTON and
MARTHA A. ECCLESTON, his wife, and others.

*Separate estate of a Married woman.*

Under Art. 45, sec. 2, of the Code, a married woman owning a separate real
estate, may charge the same with the payment of a debt contracted by her-
self and husband, by their promissory note, in which they jointly and seve-
rally bind themselves, their separate and individual estates; and the only
way to enforce the contract on the part of the wife, is to treat it as constitut-
ing an equitable lien or charge upon her separate estate, and upon failure to
pay the debt, to decree the sale of the land for its satisfaction.

A contract founded upon proper consideration, by which the husband and wife
bind themselves to execute a mortgage of the separate estate of the wife, will
be enforced by a Court of Equity, and such estate held liable for the debt
intended to be secured.

The separate estate of a married woman, is liable in equity for all the debts,
incumbrances, or other engagements which she, together with her husband,
may by express terms, or clear implication, charge thereon.

APPEAL from the Circuit Court for Montgomery County,
in Equity.

The bill of complaint in this case, filed on the 6th of
March, 1871, by the appellants, doing business in the
city of Washington, represented that on the 12th of May,
in the year 1870, Charles A. Eccleston and Martha A.
Eccleston, his wife, at that time residing in Montgomery
county, in the State of Maryland, but at the date of filing
the bill, residing in the State of New York, being in-
debted unto the complainants in the sum of $1,080.62,
did, by their promissory note of that date, jointly and
severally, promise to pay said complainants, sixty days
after date, the said sum of $1,080.62, with interest from
date, at the rate of eight per cent. per annum; and, for

the faithful performance of which, they bound themselves and their separate and individual estates; and further, that the debt for which the said note was given, was contracted on the responsibility of the separate estate of said Martha, and on the representation made by her and her husband, that she had a large and valuable separate estate in Montgomery county. The bill further alleged that the said Charles and Martha were further indebted to the complainants, on open account, in the sum of forty-one dollars, ($41.00;) that said debt was also contracted on the faith and credit of the separate estate of the said Martha, and that at the time the debt was contracted she bound her separate and individual property for the payment of the same. The bill further alleged that the said Charles had no property out of which the debts could be made, but that his wife was the owner of considerable real estate in Montgomery county, and described the several tracts which she owned. The bill charged that one of these tracts had been mortgaged by the said Charles and Martha to William C. Windham, to secure the payment of six hundred dollars; that said Windham had since died, and upon a failure of the said mortgagors to comply with the terms of the mortgage, a bill to foreclose the same had been filed by Mary C. Windham, the executrix of the mortgagee, and a decree obtained for the sale of the land, and Richard J. Bowie and R. M. Williams appointed trustees to make the sale. And further, that the said Charles and Martha had conveyed the other tracts of land, by deed of trust, to a certain William B. Webb, of Washington city, to secure the payment of $15,000 due by the said Charles to the First National Bank of Washington, and for which he had passed his five promissory notes, each for the sum of three thousand dollars, payable in one, two, three, four and five years from date respectively. The complainants alleged that they were remediless, save by the interposition of a Court

of Equity, and prayed that the property belonging to the said Martha, and all her legal and equitable estate and interest in each and every of the said tracts of land might be decreed to be sold, and the proceeds of sale, after paying to the said William B. Webb, trustee, such sum as might be due to the First National Bank of Washington, might be applied to the payment of the claim of the complainants; and that the said Bowie and Williams, trustees as aforesaid, might be ordered, after paying the debt, interest and costs, in the case of Mary C. Windham, executrix, vs. Charles A. Eccleston and wife, to pay the balance to the complainants.

The promissory note, the payment of which was sought to be enforced by the bill of complaint, was as follows:

"$1,080.62.         WASHINGTON, D. C., May 12, 1870.

"Sixty days after date, we, or either of us, jointly and severally bind ourselves, our separate and individual estates, to pay Hall & Hume the sum of one thousand and eighty and $\frac{62}{100}$ dollars, for value received, with interest from date, at the rate of eight per cent. per annum, payable at the Bk. of Washington.

"CHARLES A. ECCLESTON,
"MAT. A. ECCLESTON."

William B. Webb answered the bill. The defendants, Charles A. Eccleston and his wife, demurred to the bill. On the 9th of February, 1872, the Court (BOUIC and LYNCH, J.,) passed a decree sustaining the demurrer and dismissing the bill. From this decree the complainants appealed.

The cause was argued before BARTOL, C. J., BRENT, MILLER and ALVEY, J.

*Joseph H. Bradley*, for the appellants.

Two questions arise in this case which have not hitherto been passed upon by this Court:

*First.*—Can a married woman, holding property in this State, under the statute, encumber the same with the consent of her husband in any other mode than by deed, in which her husband shall join, or by will executed so as to pass the property, without her husband's consent?

*Second.*—If husband and wife unite in an agreement in writing to sell the wife's land, and the purchase money is paid to her, can a Court of Equity compel her to convey the land? and as a corrolary to this, if they agree to mortgage her land, and the consideration is paid, can a Court of Equity compel them to execute the mortgage?

In *Cooke vs. Husbands, et al.*, 11 *Md.*, 503, it is said: "In Maryland the law is settled, that where a mode of alienation or appointment is provided, it operates as a negative of any other mode, and is a paramount law governing and controlling every contract in relation to it;" and four cases in this Court are cited in support of the proposition. The proposition was not necessary to the decision of that case, and the cases cited do not adjudicate it on the terms thus stated. The case of *Lowry vs. Tiernan & Williamson* 2 *H. & G.*, 34, was one in which a woman, in contemplation of marriage, conveyed certain stock to trustees "to pay over the interest on the stock to her, when and as the same should be received, during her natural life, whether she be *sole* or *covert;* after her death to be divided equally among her children, if she should leave any; otherwise to go to such person as by her last will she might name." The bill was filed to alter the trust as to the corpus of the trust.

At p. 39, 40, the Court at the outset say: "The entire legal estate is transferred to trustees, who are to permit her to receive, during her life, the dividends and profits of the stock. *She has reserved no power whatever over the principal*, except merely the *jus disponendi* by last will and testament, and that only in a certain event," &c.

The case of. *Tiernan vs. Poor, et al.*, 1 *G. & J.*, 221, not only.does not decide the point, but is equally with the case of *Price.& Nisbet vs. Bigham's Exrs.*, 7 *H. & J.*, 296, 318, an authority to show that where specific power is given to alienate the estate,· it may be encumbered in modes different from the specific power, but still within the *jus disponendi.*

The case of *Brundige vs. Poor*, 2 *G. & J.*, 1, is of the same class, and establishes directly the power to *incumber* by mortgage, although the only power was to alienate by deed or dispose of by will. The case is strongly in support of the present proceeding. In *Miller & Mayhew vs. Williamson*, 5 *Md.*,, 235, the Court says: "It is expressly said, in *Tiernan vs. Poor*, that the right of disposition contained in the deed constitutes a paramount law; and that no decree could pass to enforce any contract, unless such contract be within the *limits* of her *jus disponendi.*"

But in none of these cases is the proposition, as stated by the Court, distinctly adjudicated, nor can it be inferred necessarily from the decisions in all of them. These cases, together with that in 11 *Md.*, were all decided before 1860, but since the Act of 1842, the power of the disposal of her separate estate by a married woman, has been the same as it now is under the Code.

The case of *Koontz vs. Nabb*, 16 *Md.*, 555, although not directly in point, does, by the strongest implication, affirm the right of a married woman, having a separate estate, to affect that separate estate if she enters into an obligation which presents on its face some evidence of her intent to charge the estate, and she has the power to dispose of it during her life. See also *Mutual Ins. Co. vs. Deale*, 18 *Md.*, 47 ; *Brown vs. Kemper*, 27 *Md.*, 671 ; *Emerick vs. Coakley, et al.,* 35 *Md.*, 191.

These cases lead to the direct inquiry, whether the Code, in "express language," restrains the wife in this case from encumbering her separate estate during her

lifetime, with the assent of her husband, in any other mode than by deed duly executed, in which he shall join? They settle, in accordance with the English rule and the law of this State prior to the Code of 1860, that a married woman may deal with her separate estate as a *féme sole*, provided she does so within the limitations of the settlement, although she does not pursue the precise mode pointed out in the settlement.

Under the Code she is authorized to convey with the assent of her husband. This necessarily carries with it the power with the like assent to contract to convey. It is part of the transaction leading to the conveyance. So in like manner she may mortgage. If she can mortgage, she must have power, with the assent of her husband, to contract an obligation to give a mortgage. Nor is it necessary that the instrument by which she binds, or ostensibly binds her property, shall be a complete and operative mortgage at law. Equity will deal with it, if she has received the consideration, as if it were complete, and will consider that as done which ought to be done. This point is directly ruled in *Tiernan vs. Poor*, 1 *G. & J.*, 227, 228, 229.

It is, therefore, within the *jus disponendi* under the Code, for her, with her husband, to contract for the sale or mortgage of her separate estate.

Has the wife, with her husband, in the writing exhibited with the bill, bound her separate estate. No exposition of the terms used can make her intention to bind her separate estate, with the assent of her husband, more clear than it appears on the face of the paper. Her whole estate is covered by it; but the bill discloses the fact that that estate was already heavily incumbered, and if it were, the Court would mould the remedy so as to enforce the complainants' right against her at the least injury to her estate. See 2 *Story's Eq. Juris.*, 1399 ; *Stear vs. Nelson*, 2 *Beav.*, 245, 248 ; *Hulme vs. Tenant*, 1 *Brown's*

*Ch. Rep.*, 16; *Jaques vs. Methodist Epis. Church*, 17 *Johns.*, 584; *Shattock vs. Shattock*, 2 *Eq. Cases*, 186, (*Law Reports;*) *Mrs. Matthewman's Case*, 3 *Eq. Cases*, 786, 787, (*Law Reports.*)

*Henry E. Wootten*, for the appellees.

The demurrer filed to the bill of complaint in this case, invokes the construction of the second section of Article 45, of the Code of Public General Laws.

The several Acts of 1841, ch. 161, 1842, ch. 293, and 1853, ch. 245, protected the property, real and personal, of a married woman, from liability for the debts of her husband. The Act of 1853, ch. 245, passed in compliance with the 38 sec., Art. 13, of the Constitution of 1851, simply carried out one branch of the duty imposed by the Constitution on the Legislature. It protected the property of the wife from the debts of the husband, but did not in any other respect alter or impair the marital rights of the husband therein. *Schindel vs. Schindel*, 12 *Md.*, 108, *and* 295; *Bridges & Woods vs. McKenna*, 14 *Md.*, 259; *Mutual Insurance Co. vs. Deale*, 18 *Md.*, 26.

It is conceded that the second section of Art. 45 of the Code goes further, and enacts that not only the property, real and personal, of a married woman, shall be protected from the debts of her husband, but that such property shall be held by her for *her separate use, with power of devising the same as fully as if she were a féme sole, or she may convey the same by a joint deed with her husband.* *Buchanan vs. Turner*, 26 *Md.*, 6; *Weems vs. Weems*, 19 *Md*, 344 *and* 345.

The deeds, filed as exhibits with the bill, are in the ordinary form prescribed by the Code, Art., 24; no special powers are conferred upon the grantee, and the interposition of a trustee is not necessary to secure to her the sole and separate use of her property. The question is, will a Court of Equity decree a sale of real estate con-

veyed to a married woman since the adoption of the Code, for the purpose of enforcing the payment of a promissory note executed jointly and severally, by the husband and wife?

It is true, that under the second section, of Article 45, she holds the property for her separate use, but the powers of a *féme sole* are conferred upon her *sub modo.* The object of the whole legislation of the State upon this subject, beginning with the Act of 1841, ch. 161, has been to protect the property from the debt of the husband, and to secure to her its enjoyment. The Legislature did not design to confer upon her the dominion of a *féme sole,* which would, in a countless number of instances, defeat its principal intent, that is, to withdraw the estate from the dominion of the husband.

It has been decided by this Court that a *féme covert* may act in reference to her separate estate as a *féme sole,* when the settlement contains no limitation on the subject, on the principle that the *jus disponendi* accompanies the property, unless restrained in terms or by the manifest intention of the instrument. In this case the section of the Code referred to is the settlement or instrument which declares the property described in the exhibits to be the *separate* estate of the wife; but there is a mode of alienation provided in the same section, and also by section 11 of the same Article. That mode must be pursued, for it operates as a negation of any other, and is a paramount law., governing and controlling every contract in relation to the property. *Cooke vs. Husbands,* 11 *Md.,* 493 ; *Miller & Mayhew vs. Williamson,* 5 *Md.,* 234 ; *Williams vs. Donaldson,* 4 *Md. Ch. Dec.,* 414 ; *Gelston vs. Frazier, et al.,* 26 *Md.,* 345 ; *Chew's Admr. vs. Beall,* 13 *Md.,* 360 ; *Hill on Trustees,* (3d *Am. Edition,*) 421 *to* 425, (*marg.*;) *Maclay vs. Love,* 25 *Cal.,* 367 ; 29 *Ind.,* 260.

.Any married woman is invested with the full power of a *féme sole* over all property, real or personal, or mixed,

acquired under the seventh section of the 45th Art. She can invest, sell,·or in any other manner dispose of the same. No special mode of alienation is provided by the law declaring such property her sole and separate estate. Such property is liable for the debts of the wife, and the creditor, at his election, can either proceed by attachment or in equity. Such a provision would have been useless if a creditor can appeal to a Court of Equity, and procure the sale of the real estate of a *féme covert* to enforce the payment of a debt due from her upon open account or promissory note. The seventh section embraces property acquired in a particular manner, and up to a certain amount, and evinces the legislative intent in enacting the second and eleventh sections of the same Article.

ALVEY, J., delivered the opinion of the Court.

By the contract, on which the bill of complaint was filed in this case, the appellees, being husband and wife, jointly and severally bound themselves, *their separate and individual estates,* for the payment of the debt mentioned, to the appellants; and the only question raised by the demurrer to the bill of complaint is, whether the separate estate of the wife can be bound and made liable for the payment of such debt, under the 2d section of the 45th Art. of the Code.

The section of the Code referred to provides, that all property owned or acquired by a married woman, according to the modes designated in the preceding section of the same article, she shall hold for her separate use, with power to devise the same as if she were a *féme sole,* or she may convey the same by a joint deed with her husband.

It is contended, on the part of the appellees, that, as there has been prescribed a particular mode of alienation or disposition of the wife's separate estate acquired and held under this provision of the statute, no other mode exists, and that, to allow the estate thus held to be

charged and made liable to sale for the payment of debts, as is sought to be done in this case, would contravene the policy and clear intention of the law. But in this we do not concur.

Before the adoption of this statutory provision, (1860,) it was the well settled law of this State, that a married woman, in the contemplation of a Court of Equity, occupied the position of a *féme sole*, in respect to her separate estate; and where the deed or instrument creating the separate use contained a limitation or restriction on the power of disposition, she was at liberty to dispose of it as a *féme sole*, without the assent or concurrence of either her husband or trustee   But, in case the instrument prescribed a particular mode of alienation or appointment, that mode was regarded as a negation of all others, and was required to be pursued   This restriction, however, was allowed in deference to what was supposed to be the intention of the parties to the instrument creating the estate; for, as was said in *Cooke vs. Husbands*, 11 *Md.*, 506, "a *féme covert* may act in reference to her separate estate as a *féme sole*, where the settlement contains no limitations on the subject, on the principle that the *jus disponendi* accompanies the property, unless restrained in terms, or by the manifest intention of the instrument."

In the adoption of the provision of the Code, the separate estate, which before that time was the mere creature of a Court of Equity, and not recognised at law, was made a legal limitation or estate, as to all property acquired by a married woman in the modes designated in the statute referred to; and the right and power of disposition, other than by way of devise, was from that time required to be exercised with the concurrence of her husband. The reason for requiring the concurrence of the husband is obvious. In the first place, it is supposed to operate as a check upon what might be an improvident disposition or incumbrance of her property by the wife;

and, in the second place, as the husband is interested not only in the present enjoyment of the property, but in the estate that may devolve on him in the event of the death of the wife intestate, it was deemed proper and right that the wife should not be allowed to divest herself of her estate, without the husband's consent. But it does not follow from this restriction upon the power of disposition, that the husband and wife may not contract in a manner to charge or incumber the estate; nor is it to be assumed for a moment that the Legislature ever intended to divest the Courts of their well defined and long established equity power and jurisdiction to enforce such contracts. While the statute provides the manner in which the property of a married woman may be conveyed, there is nothing indicating in the slightest degree an intention on the part of the Legislature to restrict her power to charge or incumber it, provided it be done with the concurrence of her husband. It is not disputed that the separate estate of the wife may be incumbered by mortgage, executed by the wife jointly with the husband, even as security for the husband's debts. We suppose it to be equally clear that a contract, founded upon proper consideration, by which the husband and wife bind themselves to execute a mortgage of the separate estate of the wife, will be enforced by a Court of Equity, and such estate held liable for the debt intended to be secured; (*Stead vs. Nelson*, 2 *Beav.*, 245 ;) and it is quite as free from doubt that the separate estate held by the wife, is liable in equity for all the debts, incumbrances, or other engagements which she, together with her husband, may by express terms, or clear implication, charge thereon. Having full power of disposition of the estate, the wife, jointly with her husband, may incumber and charge it to any extent that she may think proper. 2 *Story Eq. Jur.*, secs. 1399, 1399*a*. Indeed, without such power, the estate would not subserve the purposes for which it was

designed. One of the great objects of the estate is to enable the wife to maintain a separate credit, and to be independent of the misfortunes and improvidence of the husband. Without the power to charge or incumber the estate, no credit could be maintained on the faith of it, and every occasion to raise money by the wife would likely involve the necessity of either selling it absolutely, or conveying it by formal mortgage. This was never the design of the Legislature.

The debts charged upon the estate constitute, as between the parties, equitable liens, and are enforced as being somewhat in the nature of equitable mortgages. This, until the act of 1872, chapter 270, was the only remedy for the creditor, as against a married woman or her separate estate. In the view of a Court of Equity, the mere formality of the charge or incumbrance is quite unimportant, provided the intention of the parties is sufficiently manifest. In the case of *Tiernan vs. Poor*, 1 *Gill & John.*, 216, the Court, in speaking of the instrument set up in that case to charge the separate estate of a married woman, said : "According to our views these averments make out a clear case for equitable interposition. In point of form it may not have been strictly correct to treat the instrument of writing in controversy, as a legal mortgage, as it seems to have been done in the original bill. As such it may not be clothed with the necessary legal attributes. If it be not thus clothed, it is at all events, clearly a contract which equity will treat as a mortgage, and as between these parties, so far as concerns this suit, liable to all the incidents of a strictly legal mortgage, as much so as if all the formalities of acknowledgment, privy examination, and registration, had been pursued." See also *Brundige vs. Poor*, 2 *Gill & John.*, 1.

In this case, by the express terms of the contract sought to be enforced, the husband and wife bind the separate

estate of each of them, and the only way to give force and efficacy to the stipulation, so far as the wife is concerned, is by treating the contract as constituting an equitable lien or charge upon her separate estate ; and, upon failure to pay the debt, to decree the sale of the land for its satisfaction. 2 *Gill & John.*, 1.

Entertaining these views, we are of opinion that the demurrer to the bill of complaint should have been overruled ; and we shall reverse the decree appealed from, and remand the cause for further proceedings.

> *Decree reversed,*
> *and cause remanded.*

(Decided 21st February, 1873.)