## SPRAY *v.* RODMAN ET AL.

SUBROGATION.—Several persons were owners of undivided interests in certain land, and judgments were rendered which were liens upon the interests of some of such owners. A proceeding for partition of the land was instituted, and while it was pending the judgment debtors sold their interests, and their vendee was substituted for them as a party to such partition proceeding. The land, not being divisible, was sold, and the purchaser paid the commissioner the full value of the land, without any knowledge of said judgment liens, which judgments he was afterward compelled to pay to protect his title.

*Held*, that the land having been converted into money, the rights of the parties to the money should be the same as they were in the land, and that the purchaser who had paid off the judgments was entitled to be subrogated to the rights in such money of the distributee thereof who should have paid such judgments, and to receive from such commissioner out of such distributee's share the amount paid to satisfy said judgments.

SAME.—Where one pays a debt which could not properly be called his own, but which it was his interest to pay, or which he might have been compelled to pay for another, the law subrogates him to all the rights of the creditor.

VOL. XLIII.—15

SAME.—It is only in cases where the person paying a debt stands in the situation of a surety, or is compelled to pay in order to protect his own interests, or in virtue of legal process, that equity substitutes him in the place of the creditor, as a matter of course, without any special agreement.

From the Jackson Common Pleas.

*W. K. Marshall*, for appellant.

*B. H. Burrell*, for appellees.

DOWNEY, C. J.—The appellant sued the appellees, and there was judgment against him, on demurrer to his complaint. He excepted to the sustaining of the demurrer and the rendition of judgment, and having appealed to this court, has assigned the ruling as error. The facts stated in the complaint are, in substance, as follows: That there was then a suit pending in the said court, wherein Aden E. Rodman, Randolph M. Banks, and Jesse Banks, by his next friend, Nancy Banks, were plaintiffs, and Jennetta J. Summer, Malinda Banks, Josephine Banks, Adaline Lanier, James M. Lanier, Beedy Abigal Lanier, Andrew J. Banks, Althea Banks, and Margaret A. Martin were defendants, for the partition of certain real estate described in the complaint, and situated in Jackson county; that said Randolph M. Banks and John Banks were each the owners of one undivided eighth in value thereof, and while said suit was pending sold and conveyed the same to said Aden E. Rodman, who thereupon made himself a co-plaintiff with said other plaintiffs, and by virtue of his said purchase and the conveyance to him became the owner of said undivided interest in said lands, namely, the one-fourth part thereof; that in said proceeding for partition, the court found that said land could not be divided without injury to the parties, and appointed a commissioner to sell the same; that the commissioner sold the said real estate to the plaintiff, at the price of twenty-six hundred dollars; that at and before the commencement of said suit for partition of said land, William H. Ewing obtained a judgment against said Randolph M. Banks, in the court of common pleas of said county, for eighty-eight

dollars and fifty-three cents, and David H. Long, and John R. Hamilton, as administrators of the estate of Samuel P. Mooney, deceased, obtained a judgment in said court against John Banks for one hundred and forty-four dollars and sixty-two cents; that said judgments were valid liens on said interests of said Randolph M. Banks and John Banks in said land, while they owned the same and after they sold the same to said Rodman; that said Randolph M. and John Banks were insolvent at the time of said sale, and ever since have been; that said Spray, the plaintiff, had no knowledge whatever of the existence of said liens at the time he purchased said land, but purchased under the belief that the land was free from incumbrance; that the purchase-money which said plaintiff was to pay for said land had all been paid and was then in the hands of said commissioner, and was about to be distributed under the order of the court to the parties to this suit; that on the 22d day of August, 1871, the said judgments being in full force, unpaid, and valid liens upon said real estate, the plaintiff was compelled to and did pay the same off in full, in all two hundred and eighty-two dollars and thirty-nine cents, to protect his interest in and title to said real estate, the said sum being the amount of said judgments at the time of the payment thereof; that the share of said Aden E. Rodman as the grantee of said Randolph M. and John Banks in said purchase-money will be over five hundred dollars; and he avers that he is entitled to receive said sum of two hundred and eighty-two dollars and thirty-nine cents, and interest thereon since the said 22d day of August, 1870, out of the interest of said Randolph M. and John Banks and Aden E. Rodman in the proceeds of the sale of said real estate.

Prayer, that the plaintiff be subrogated to the rights of the defendants in said proceeds to the extent of said sum and the interest thereon since payment, and to the rights of said Hamilton and Long, administrators, and said William H. Ewing, and for other relief.

The demurrer to the complaint was on the ground that

the complaint did not state facts sufficient to constitute a cause of action.

The doctrine of subrogation is probably derived from the civil law, and in a case where it is properly applicable is eminently just and proper. In a general sense it is the act of putting, by a transfer, a person in the place of another, or a thing in the place of another thing. It is the substitution of a new for an old creditor and the succession to his rights, *transfusio unius creditoris in alium.* In a more confined sense, and the sense in which it is applicable to the present case, it is where a man pays a debt which could not properly be called his own, but which nevertheless it was his interest to pay, or which he might have been compelled to pay for another, in which case the law subrogates him in all the rights of the creditor. Bouv. Law Dict., Tit. Subrogation. Accordingly, it was decided by this court, in *Richmond* v. *Marston*, 15 Ind. 134, that it was only in cases where the person paying the debt stands in the situation of a surety, or is compelled to pay in order to protect his own interests, or in virtue of legal process, that equity substitutes him in the place of the creditor, as a matter of course, without any special agreement. See, also, *Peet* v. *Beers*, 4 Ind. 46, and *Rardin* v. *Walpole*, 38 Ind. 146.

In the case under consideration, the judgments were liens upon the real estate so far as it was owned by Randolph M. and John Banks, and the judgment creditors might have enforced the liens and made the amounts of their judgments out of the land. While matters were in this shape, the petition for partition was filed, and a division of the land was sought, Randolph M. and John Banks being made parties to the action. While this suit was pending, Randolph M. and John sold and conveyed their shares of the land to Rodman, and he took their place in the partition suit, the judgments still remaining liens on the land, notwithstanding the conveyance thereof to him. The land, not being susceptible of division, was sold, by order of the court, the appellant, becoming the purchaser thereof, converted into money,

and the money was in the hands of the commissioner who had been appointed to sell the land. The land having been converted into money, we suppose the rights of the parties in the money should be the same that they were in the land. We understand from the complaint that the appellant paid the full value of the land, not having any actual knowledge of the existence of the judgment liens. He paid off the judgments, in order to prevent them from being made out of the land which he had bought, and for which he had paid. What Rodman purchased, and what was conveyed to him, was the interest of Randolph M. and John Banks in the land, subject to the two judgments. Had he continued to hold the two shares in the land, he must have paid off these judgments. Had he not paid them, they would have been collected and made out of the shares of the land so conveyed to him. Should the fact that the land was sold and converted into money make any change in his rights? We think there is no justice in his claim that it should. The debts for which the judgments were rendered were essentially the debts of Rodman after he purchased the shares of the land and received the conveyances therefor. Not that they were personally binding upon him, but they were his debts because he had acquired the ownership of the shares *cum onere.* After Spray purchased the land, including the shares of Rodman, his land stood as security for the payment of the debt of Rodman, and having paid the debt to relieve his lands, we do not see any reason why, in equity and justice, he should not stand in the place of the lien holders, and to that extent share in the proceeds of the sale of the land. If he cannot do this, Rodman escapes the payment of the debts—gets what he never bought and was never entitled to, the full shares of the land acquired from Randolph M. and John, without any abatement on account of the liens which were upon them, and which, as we have said, he or his shares were bound to pay. If he shall get, of the proceeds of the land, the price of the shares which he purchased, less the amount of the judgments, he will get all

that he purchased, and all that he ought to claim. The court should have overruled the demurrer.

The judgment is reversed, with costs, and the cause remanded, with instructions to overrule the demurrer.