ANNA FLAUM and her husband v. WALLACE BROTHERS.

*Married Woman— Contracts of.*

1. A married woman deposited a certain sum of money, being part of her separate property, with W. ; afterwards she agreed with W. to leave said sum in his hands as security or collateral for an indebtedness from F. to W., W. to retain the money until such indebtedness from F. to W. should be reduced to a certain amount. This agreement was in writing, signed and sealed by W. and the married woman and her husband. As part of this transaction W. gave the married woman a note for the sum deposited by her with him, the note expressing on its face that it was '' not transferable," and being payable one day after date. The married woman and her husband sued W. on the note before the terms of the above-mentioned agreement had been complied with: *Held,* that they could not recover.

2. The principles declared in *Pippen v. Wisson,* and approved in *Dougherty v. Sprinkle,* establish the proposition, that whenever, under the laws in force prior to the Constitution of 1868, a *feme*

FLAUM *v.* WALLACE.

*covert.* in the absence of any special provisions in the deed of settlement, could, with the consent of her trustee, bind her equitable separate estate, she may *now*, with the written consent of her husband, bind her statutory separate estate. Where the case falls within the exceptions mentioned in *The Code*, § 1826, the consent of the husband is not required.

3. Under the present Constitution and laws of this State a married woman may, with the written consent of her husband, *expressly* charge her statutory separate *personal* estate by her engagements in the nature of executory contracts, although the consideration for such engagements does not inure to her benefit, or to that of her separate estate. The intent to so charge must in such cases appear in the instrument creating the liability, but it is not necessary that *specific* property be charged.

4. A married woman may, with the concurrence of the trustee, where such concurrence is required, charge her equitable separate estate to the extent of the power of disposition conferred by the deed of settlement. Of course, where there are limitations, or other special provisions, these must be strictly pursued.

5. Whether a married woman's engagements can, under any circumstances, bind her separate *real* estate in the absence of a *specific* charge by way of mortgage or other conveyance, is an open question still, as it does not arise in this case, and was not passed upon in *Arrington* v. *Bell*, 94 N. C., 248.

6. No peculiar efficacy is given to a married woman's writings under seal, where they are in the nature of executory contracts, as the Courts will in all cases look into the consideration, and if it be such as would sustain an action upon a contract made by a person *sui juris* it will be sufficient.

7. The complaint, in an action to enforce an executory contract of a married woman, should allege that she has a separate estate subject to the charge sought to be enforced; and the execution can issue against that alone.

8. A married woman can claim the same exemption from execution as she would be entitled to if she were a *feme sole.*

CIVIL ACTION, tried before *Brown*. *J.*, at February Term, 1889, of IREDELL Superior Court.

The plaintiffs were Anna Flaum and her husband, the defendants the members composing the mercantile firm of Wallace Brothers.

The complaint alleged, in substance, that for value received of the plaintiff, Anna Flaum, the defendants, in their firm name of " Wallace Bros.," made and delivered to said Anna Flaum, on March 5, 1886, the promissory note, a copy of which is hereafter given ; that no part of said note had been paid, but the whole was still due.

The answer admitted the execution of the note, and alleged that it contained only a part of the contract between Anna Flaum and defendants; that the note was given for money which Anna Flaum had left on deposit with defendants, and at the time of its execution the defendants, at plaintiffs' request, turned over to the firm of Flaum Brothers (a mercantile firm composed of plaintiffs' sons) goods of the value of $996 25, which Anna Flaum had previously purchased of defendants at the price of $996.25, and for which she owed the entire price ; that Flaum Brothers took said goods and assumed the indebtedness for the price thereof, and to pay eight per cent. interest on such indebtedness; that defendants agreed to allow Flaum Brothers to have said goods only upon the express understanding that Anna Flaum would not only secure the payment for the same, but that she would likewise secure an amount of over $1,500, which said Flaum Brothers owed defendants for other goods previously sold them, making a total indebtedness due from Flaum Brothers to defendants of $2,497.57, on March 4, 1886 ; that in consideration of such understanding and as security for such indebtedness of Flaum Brothers, the plaintiffs entered into the written agreement with defendants, a copy of which appears hereafter; that said agreement, bearing date March 3, 1886, was executed as part of the same transaction under which the note sued on was given—that they were intended to be, and defendants insisted should be, construed together as one contract; that Flaum Brothers had not paid the $996.25 and interest, nor had they reduced their entire indebtedness to $750, but still owed defendants about $1,500.

Upon which statement of facts defendants insisted that the conditions, upon which plaintiffs would be entitled to demand payment of the note or maintain their action, had not been fulfilled.

The note sued on was as follows:

" $540.88.                STATESVILLE, N. C., March 5, 1886.

" One day after date we promise to pay to the order of A. Flaum five hundred and forty dollars .and eighty-eight cents, without defalcation, for value received, with 8 per cent. interest per annum.   Not transferable.

"WALLACE BROS."

It was admitted that A. Flaum was, at the date of said instrument, and is still, the wife of Julius Flaum, and that said money has not been paid.  The plaintiffs having offered said paper in evidence, the execution of the same being not denied, rested their case.   It is admitted that there is no evidence in this case that A. Flaum is a free trader.

The defendants then, in support of their contention that the paper sued on represented and evidenced but a part of the entire business transaction between themselves and plaintiff A. Flaum, out of which said instrument originated, introduced Wm. Wallace, one of the defendants, as a witness, who testified that the written agreement, of which a copy appears below, was signed and executed by plaintiff A. Flaum, with her husband Julius Flaum, in the presence of the witness, and of each other, on the 4th day of March, 1886, at the said A. Flaum's place of business, and was delivered to defendants that day; that it had been prepared and sent to her residence on the evening of March 3, 1886, for her inspection, and thus bore date accordingly; that she came down to her place of business in town the next morning (March 4), bringing said agreement with her, and upon witness going over to her said place, the said agreement was

signed and executed by plaintiff A. Flaum and husband, as aforesaid.

Objection was made in apt time to the admission of this testimony by the plaintiffs' counsel; objection overruled, and plaintiffs' counsel excepted.

Said witness further testified, that when said agreement, hereinafter copied, was so signed and executed by A. Flaum and her husband, she had the sum of $540.88 on deposit with defendants, and that this was the identical money for which the defendants gave her the instrument sued on, and referred to in the written agreement offered by defendants, and that the reason said instrument bears date March 5, was that when they had executed the agreement hereinafter copied (on March 4, as aforesaid) it was found that said A. Flaum had forgot to bring down town, from her residence, some other written evidence of her said deposit with defendants (which his Honor did not, however, permit to be described as to form or contents), and which was to be surrendered and substituted by the instrument sued upon, and so the making of this latter was postponed until that could be done, and in this way came to be made and dated March 5, 1886, while the said agreement was dated March 3, and executed March 4.

Plaintiffs' counsel objected in apt time to the admission of the above testimony, and the objection being overruled, they excepted.

Defendants then introduced the aforementioned written agreement, executed by said A. Flaum and her husband, and which is as follows, to-wit:

" We, Wallace Bros., have this the 3d day of March, sold to Flaum Brothers, of Hickory, the goods bought of A. Flaum February 22, 1886, for the amount of A. Flaum's indebtedness to us ($996.25) on twelve months time at 8 per cent. interest from date. Flaum Brothers are to give us a deed of trust on entire stock, which is to be recorded. The said

A. Flaum agrees to indorse the note if required. If, in or at the expiration of the twelve months, the above amount shall have been settled in full, then we are to allow A. Flaum to draw the money she has now on deposit with us, if she desires to invest in real estate, which real estate, if bought, the said A. Flaum agrees to convey to us in some way as a security against whatever Flaum Brothers may owe us; otherwise than for real estate purchases, the said amount to remain in our hands as security or collateral, unless Flaum Brothers shall have reduced their account with us to (say) $750, then the said A. Flaum may withdraw amount at pleasure.

"In testimony whereof, we, the above named, together with Julius Flaum, husband of A. Flaum, witness our hands and seals.

<blockquote>
"(Signed)     A. FLAUM  [Seal].<br>
            JULIUS FLAUM [Seal].<br>
            WALLACE BROS. [Seal]."
</blockquote>

Plaintiffs' counsel objected to the admission of this paper. Objection overruled, and they excepted.

It was admitted that Flaum Bros. were the sons of plaintiff A. Flaum.

The witness, Wm. Wallace, testified further, that the foregoing agreement, signed by A. Flaum and her husband, was delivered to and kept by defendants, and that defendants gave the instrument sued on to A. Flaum as evidence of her aforesaid $540.88 on deposit, and referred to in said written agreement with defendants [that it was made "not transferable" to prevent it from going into possession of persons strangers to the foregoing agreement]. He further testified that Flaum Bros. owed defendants at the date of said papers over $2,400, including the $996.25 then advanced and mentioned in the aforesaid agreement; that they now owed defendants $1,370.50, and that they have never (since March

4, 1886) reduced their indebtedness to defendants as low as $750, nor anywhere near that sum.

Plaintiffs' counsel, in apt time, objected to the admission of said testimony; the objection being overruled, except as to the sentence enclosed in brackets, plaintiffs' counsel excepted.

The evidence enclosed in brackets was ruled out, on motion by plaintiffs.

Witness also testified that A. Flaum had never had any other deposit with their firm except the said $540.88, evidenced by paper sued on, and referred to in the written agreement.

Plaintiffs contended:

1. That the plaintiff Anna Flaum, being a married woman at the time she signed the paper herein above set forth, dated March 3, 1886, it was void and of no force and effect as to her.

2. That as this paper was signed and delivered on the 4th of March, 1886, and the note sued on was executed on the 5th of March, 1886, and as neither instrument referred to the other, they were not contemporaneous, and could not be taken as a part of the same transaction.

3. That it appeared that defendants owed the plaintiff, Anna Flaum, $540.88, at the time of this transaction, called by defendants a "deposit," but for which she held their note. And this old note was given up to defendants, and the note sued on was given in its stead. Therefore, there was no pledge or delivery of this money by the plaintiff, Anna Flaum, to defendants, to secure the indebtedness of " Flaum Bros."

4. That had it been a pledge or delivery by the plaintiff, Anna Flaum, to the defendants, to secure the indebtedness of "Flaum Bros." to defendants, that when they executed and delivered the note sued on to the plaintiff, Anna Flaum, it was equivalent to a redelivery of the money to her, and

defendants thereby lost all lien on the same; and so, verbally on the argument, asked his Honor to instruct the jury.

The Court submitted the following issue to the jury : "Are the plaintiffs entitled to recover of the defendants the sum of $540.88, and the interest, being the note sued on, or any part thereof?"

Answer: " No."

There was no objection made to form of the issue, and no other issue tendered by plaintiff.

His Honor instructed the jury as follows :

" If the jury believe that the $540.88, represented by the note sued on, was deposited with the defendants by Mrs. A. Flaum, as security for a credit extended, in consequence of such deposit, to Flaum Bros., her sons, and that said note and the paper-writing put in evidence by defendants are one transaction and agreement, and so intended by Mrs. A. Flaum and her husband and these defendants, and if the jury believe that said debt of Flaum Bros. has never been reduced to $750 at any time since the date of the deposit, and there is and never has been any other consideration for the note sued on, except the $540.88 deposited, as claimed by defendants, in pursuance of the paper-writing, then plaintiffs are not entitled to recover. Burden is on the defendants to satisfy you by preponderance of evidence of the truth of the facts asserted by them. If not so satisfied, you should find for plaintiffs."

Plaintiffs excepted.

The verdict of the jury being for the defendants, and judgment rendered thereon, plaintiffs appealed.

*Mr. D. M. Furches,* for the plaintiffs.
*Mr. W. M. Robbins,* for the defendants.

SHEPHERD, J. For the first time, we believe, in this State, is the important question presented, whether a married woman may, with the written consent of her husband,

expressly charge her statutory separate estate by an engage-
ment in the nature of an *executory* contract, where the con-
sideration is not for her benefit, or for the benefit of the estate.

As the writing relied upon by the defendants in this case
relates only to money, our decision is applicable to the sepa-
rate personal estate alone.

It is well established, except in the cases mentioned in
*The Code*, §§ 1828, 1831, 1832, 1836. that "at law a *feme
covert* is incapable of making a contract of any sort, and any
attempt of hers to do so is not simply voidable, but abso-
lutely void. If, however, she be possessed of separate prop-
erty, a court of equity will so far recognize her agreement
as to make it a charge thereon. But even in that case, and
in that court, her contract has no force whatever as a per-
sonal obligation or undertaking on her part. * * * Nor was
there any change wrought in this particular by the altera-
tions made in our court system under the Constitution of
1868, or by the adoption of the statute known as married
woman's act. It was in reference to those very alterations,
and the effect of the statute, that the Court declared in *Pip-
pen* v. *Wesson*, 74 N. C., 437; *Huntley* v. *Whitner*, 77 N. C., 392,
*that no deviation from the common law had been produced thereby
as respects either the power of a feme covert to* contract, in the
nature of her contract, or the remedy to enforce it; that as a
contract remedy her promise is still as void as it ever was,
with no power in any court to proceed to judgment against
her in *personam.*" *Dougherty* v. *Sprinkle*, 88 N. C., 300.

The limits, imposed by the Constitution and statute, show
clearly, says RODMAN, J., in *Pippen* v. *Wesson, supra,* " that
the separate estate given (by the Constitution) was such as
it had previously been defined to be, to which neither an
absolute power of disposition, nor the general power to con-
tract, were necessary incidents. The statute was intended
to take the place of a deed of settlement, and must be con-
strued as such deeds had been, as conferring on married

women no powers beyond those expressly given or implied.
* * * The draughtsman evidently had in mind the exist-
ing law above stated, that no married woman could make
any personal contract, but only one to affect or charge
separate estate ; the object was to require the consent of the
husband in lieu of the consent of the trustee, which the law
required when the separate estate was created by a deed of set-
tlement. * * * The meaning was not that a married woman
may make contracts which, by existing law, she had no
power to make, but that she shall not make such contracts
as by existing law she had power to make, without the con-
sent of her husband. The intent was not to enlarge her
special power by requiring the husband's consent."

This restrictive interpretation of the Constitution and
statute, and the assimilation of the statutory to the equita-
ble separate estate, in respect to the incurring of liabilities
and their enforcement, have been too long recognized by
our decisions to be now regarded as open questions. What-
ever doubt may have existed as to the correctness of the
construction, it is well sustained by the weight of American
authority. Bispham's Principles of Eq., sec. 103 ; Bishop on
Married Women, vol. 2, 211 ; Pomeroy's Eq. Juris., vol. 3,
and many other authors upon the subject.

The principles declared in *Pippen* v. *Wesson, supra,* and
approved by the Court in *Dougherty* v. *Sprinkle, supra,* estab-
lish the proposition, *that whenever a feme covert, under the former
law, in the absence of any special provisions in the deed of settle-
ment, could, with the consent of her trustee, bind her equitable
separate estate, she may now, with the written consent of her hus-
band bind, her statutory separate estate.* Where the case falls
within the exceptions mentioned in *The Code,* § 1826, the
consent of the husband is not required.

This leads us, therefore, to the consideration of the married
woman's capacity to charge, and the manner in which she

103—20

may charge, her separate estate, where there is no specific provision in the deed of settlement. Mr. Bishop, vol. 1, sec. 847, well says: " That since the confusion of tongues at the Tower of Babel, there has been nothing more noteworthy, in the same line, than the discordant and ever-shifting utterances of the judicial mind on the subject. * * * True, there has been, sometimes, a language which, though limited in its sphere, was tolerably plain ; but no sooner was the language in the way of becoming understood, than, lo ! some conquering power of another sort came in, and all was confusion once more." It would be unprofitable, for the purpose of this discussion, to trace the history of judicial decision in England upon this subject. Still less beneficial would it be to attempt to reconcile the conflicting decisions of the American courts. It is but just, however, to remark, that as many of these decisions are based upon dissimilar statutory provisions, their inconsistencies, as to general principles, are often more apparent than real.

MANLY, J., in *Knox* v. *Jordan*, 5 Jones' Eq., 175, says that " this subject has undergone much discussion, and has been variously settled elsewhere, but in North Carolina it is still considered an unsettled question, in many respects. No case has yet gone to the extent of sanctioning the doctrine that, as to the separate property, the married woman is regarded as a *feme sole* in all respects. This seems to be the English doctrine. * * * As we have said, however, we recognize as *settled law* the principle upon which the case of *Frazier* v. *Brownlow*, 3 Ire. Eq., 237, stands, viz.: that a wife may, when not restricted by the deed of settlement, with the concurrence of her trustee, specifically charge her separate estate with her contracts and engagements. *She may incumber expressly, but not by implication.*"

The implication spoken of by the learned Judge means that which, according to the English doctrine, arose simply from the mere fact of contracting a debt, the theory being

that, inasmuch as she could make no personal contract, it logically followed that she must have intended to contract with reference to her separate estate. " The words ' not by implication,' though found in the decision, are not to be understood in the strictest sense as excluding necessary implications (*Withers* v. *Sparrow*, 66 N. C., 169), * * * arising out of the nature or consideration of the contract, showing that it was for her benefit." *Pippen* v. *Wesson, supra*

So, then, it was settled that where there was no such " necessary implication," in order to bind the estate the debt must have been expressly charged upon it. This brings us to the important question which was left open by RODMAN, J., in *Pippen* v. *Wesson*. He says : " We put our decision on the ground that a married woman has no power to contract a personal debt or to enter into any executory contract, even with the written consent of her husband, unless her separate estate is charged with it, either expressly, or by necessary implication arising out of the nature of the consideration of the contract, showing that it was for her benefit. *Whether the contract would be good if it did expressly charge the separate estate, but was not for the wife's benefit, it is unnecessary to say.*" Upon this point we have no direct decisions, but there are *dicta* on both sides.

In *Withers* v. *Sparrow, supra*, it is said that there is now no reason why the English doctrine should not prevail. On the other hand, in *Dougherty* v. *Sprinkle, supra*, it was said that the consideration must be beneficial to the *feme covert*. The only question before the Court was, whether a Justice of the Peace had jurisdiction, and the remark was unnecessary to its determination.

No authority is cited in support of the proposition.

There is also a *dictum* in the same direction in *Rountree* v. *Gay*, 74 N. C., 447, decided at the same term when *Pippen* v. *Wesson* was before the Court, the opinion being delivered by the same Justice. There may be found, in other cases,

general expressions of similar import, but an examination will disclose that they were unnecessary to the decision of the particular question presented.

To the same effect is the intimation of Mr. Malone in his valuable work on Real Property Trials. All of these intimations, it is conceived, were suggested by RODMAN, J., in *Pippen* v. *Wesson,* for none of the previous cases furnish any ground for such a proposition. The learned Judge suggests (for it is but a suggestion) that, inasmuch as resort must be had to a court of equity to enforce the indebtedness, that court will not enforce it unless it was for the benefit of the married woman. No authority whatever from our decisions is cited, for none, we believe, can be found; but he relies upon *Owen* v. *Dickenson,* 1 Craig & Phil., 48 (Cond. Eng. Ch. Reps., 48), and the leading American case of *Yale* v. *Dederer,* 18 N. Y., 265, 22 N. Y, 450. We suppose that these cases were cited in support of the principle that the contracts of a married woman, being void, they could only be enforced in equity. So far from laying down the doctrine that the consideration must be beneficial, they clearly establish the contrary. The English case did not involve the question, the consideration appearing to have been for the benefit of the *feme covert,* but Lord COTTENHAM takes occasion to approve of Lord THURLOW's ruling in *Hulme* v. *Tenant,* 1 Wh. and T. L. C., where the doctrine is broadly laid down, that a married woman can bind her separate estate by her general engagements, and that equity will enforce them.

This jurisdiction by the courts of chancery was not exercised, we think, for the purpose of enforcing merely equitable claims against her, but to give the same effect to her general engagements, *quoad* the separate estate, as the law would have given had she been *feme sole.*

The other case referred to (*Yale* v. *Dederer*) has been the subject of much comment, and occasionally severe criticism. The Court held that where the consideration was not for the

benefit of the wife, the debt must be expressly charged upon her separate estate, and in the same instrument creating the obligation. There was much excitement in the legal mind, both in New York and other States, as to this departure from English rule, and the case was three times before the Court of Appeals, the first appeal having been decided in 1858, and the last, as far as we are informed, in 1877, after *Pippen* v. *Wesson* was decided. The defendant, Mrs. Dederer, executed a note, as surety for her husband, for the purchase of some cows, but she did not, in the note, expressly charge her separate estate.

CHURCH, C. J., in the 68th N. Y., 329, thus summarizes the ·questions involved and the points decided: "The first time, it was decided that, in order for a married woman to charge her separate estate with a debt not contracted for the benefit of her separate estate, it was necessary that there should be evidence of an intention thus to charge it, and that a note or other obligation was not sufficient evidence. 18 N. Y., 265· On the next trial, it was found that the defendant did intend to charge her separate estate, and this Court held that, when the obligation was in writing, such intention must be expressed in the instrument creating the obligation. 22 N. Y." "That," he says, "was the precise point when the case was last before the Court."

He then affirms the previous rulings, to the effect, as stated in the syllabus, "that in order to charge the estate of a married woman with a debt not contracted for the benefit of her separate estate, the intent to charge such estate, where the obligation is in writing, must be expressed in the instrument."

It is difficult to conceive how such a decision is authority for holding that, when such a debt is *expressly* charged, in writing, upon her separate estate, it is not binding.

Mr. Schouler, Domestic Relations, sec. 143, says: "The principle of the decision was this, that in order to create a

charge upon the separate estate of a married woman, the intention to do so must be declared in the very contract which is the foundation of the charge, or else the consideration must be obtained for the direct benefit of the estate itself." Later New York decisions follow the rule of this case, and require a distinct written obligation to bind the wife, where the debt is not contracted for the direct benefit of the estate.

In the *Corn Exchange Ins. Co.* v. *Babcock*, 42 N. Y., 613, the wife indorsed, as surety, the husband's promissory note, as follows: "For value received, I hereby charge my individual property with the payment of this note. (Signed) Armina Babcock." The Court held that this was a charge upon the separate estate, and *Yale* v. *Dederer* was cited as an authority in support of the decision.

Mr. Schouler further says, that " the tendency on both sides of the water is towards the conclusion, that the debts of a married woman having separate property are only surely charged by a court of equity upon that separate property, and payment enforced out of it, when they are contracted by her for its benefit, or expressly made a charge thereon, or expressly contracted on its credit, and, of course, to the extent only to which the wife's power of diposal may go."   *   *   *

"Benefit is not the sole test; but to the extent of her power of disposition over her separate estate, the wife may charge it with such engagements as she sees fit to make, provided the evidence of intention be satisfactory (upon which point States differ), and provided, of course, that the transaction was voluntary on her part and not fraudulently procured."

Bishop, *supra*, vol. 1, sec. 872, quotes, with approval, the language of HARRIS, J., in *Yale* v. *Dederer*, 18 N. Y., 265–283, that what will constitute a charge on the estate " is simply a rule of evidence. All agree that when the wife has expressly

charged the payment of a debt upon her separate estate, whether it be her own debt or the debt of another, such charge is valid and will be enforced."

In *Stephen* v. *Beall*, 22 Wallace, 329, the Supreme Court of the United States says that " the doctrine that a married woman has the power to charge her separate estate with the payment of her husband's debts, or any other debts contracted by her as principal or as surety, has been uniformly sustained for a long period of time. *Hulme* v. *Tenant*, 1 Brown's Ch. Cases, 16 ; *Standford* v. *Marshall*, 2 Atkyns, 69 ; *Bullpin* v. *Clarke*, 17 Ves , 365 ; *Jaques* v. *Methodist Church*, 17 Johns., 548; *Yale* v. *Dederer*, 22 N. Y., 456 ; same case, 18 N. Y., 276 ; *Corn Exchange Ins. Co.* v. *Babcock*, 42 N. Y., 615 ; Story's Eq., secs. 1396–1401. The question has been, in respect to the manner in which the conceded power should be exercised and in respect to the requisite evidence of its due execution."

To the same effect is *Radford* v. *Carwile*, 13 W. Va., 572, which is an able and exhaustive review of all of the authorities upon the subject. Also *Hall* v. *Eccleston*, 37 Md., 510 ; *Elliott* v. *Gow·r*, 12 R. I., 79 ; *Wooden* v. *Perkins*, 5 Gratt., 345 ; *Heburn* v. *Warner*, 112 Mass., 271 ; *Williams* v. *Hugunin*, 69 Ill , 214; *Willard* v. *Eastham*, 15 Gray, 328 ; *Hodson* v; *Davis*, 43 Ind., 228.

These authorities, and many others which could be cited, abundantly show that a " beneficial " consideration is not necessary where the wife expressly charges separate estate.

As we have said, we have in this State no decision directly in point. In *Frazier* v. *Brownlow*, 3 Ired. Eq., 237, the English rule was approved. RUFFIN, C. J , says, that Lord ELDON approved of the decree in *Hulme* v. *Tenant, supra,* on the ground that the " intention to contract with reference to the separate estate of the wife was to be implied from the circumstances of her joining the husband in one bond and giving another solely. And he lays down the doctrine,

which seems to have been generally adopted in succeeding
cases, that the separate property is liable only to a person
contracting with her, not as a married woman merely, *but
as a married woman having a separate estate.* In other words,
the engagement must be contracted with reference to the
separate property, either express or presumptive. All admit
that, if clearly so contracted, in reference to the seperate
property of a *feme covert* and upon the faith of it, her
engagements must be answered out of her separate personal
property."

The doctrine thus laid down is distinctly approved
as we have seen, in *Knox* v. *Jordan, supra,* with the
modification that the estate cannot be charged by impli-
cation merely. It is there distinctly said that, " she may
alien or incumber it (the separate estate) in the execu-
tion of powers conferred on her by the terms of the trust,
and if not restricted by the terms, may, under the authority
of *Frazier* v. *Brownlow,* charge the income or profits with the
payments of debts, *or appropriate them to any selected object,*
provided such charge or appropriation be specific and une-
quivocal and concurred in as before stated." In that case
(*Knox* v. *Jordan*) the wife signed a note as surety for her
husband, and the bill was dismissed because there was no
express charge upon the separate estate. No point was
made as to the consideration, and we think, from what was
said by the Court, that had the debt been "specifically"
charged with the consent of her trustee, the Court would
have enforced its payment. Indeed, the reasoning of the
Court, in view of the authorities, can lead us to no other
conclusion.

The words "specifically charged," as used in the opinion,
are synonymous with *expressly charged.* They cannot mean
that the charge must be upon *specific property,* for such was
not the character of the charge in *Frazier* v. *Brownlow,* which
case was approved, with the modification mentioned in *Knox*
v. *Jordan.*

Sustained, as we are, by this great weight of authority, we conclude that the wife may, with the written consent of her husband, expressly charge her statutory personal separate estate by her engagements in the nature of executory contracts, *although the consideration does not inure to her benefit or that of the estate.* The intent to so charge must, in such cases, appear in the instrument creating the liability.

This applies also to the equitable separate estate, which may, with the concurrence of the trustee, where such concurrence is required, be charged to the extent of the power of disposition conferred by the deed of settlement. Of course, where there are limitations or other special provisions, these must be strictly pursued. *Hardy* v. *Holly,* 84 N. C., 661.

In the enforcement of these charges no peculiar efficacy is given to writings under seal, as *at law* the *feme covert* is incapable of making such executory contracts. The Court will, in all cases, look into the consideration, and if it be such as would sustain an action upon a contract made by a person *sui juris,* it will be sufficient.

The complaint should allege that the wife has a separate estate, subject to the charge, and the execution can issue against that alone. *Dougherty* v. *Sprinkle, supra.*

The wife can claim the same exemption from execution as she would be entitled to if she were *feme sole.*

We are not authorized by the facts of this case to say what effect such executory engagements may have upon the separate real estate of the wife, where there has been no specific charge by way of mortgage or other conveyance. This point was not passed upon in *Arrington* v. *Bell,* 94 N. C., 247, and is still an open question.

The application of the principles we have laid down to the case before us, is quite clear.

Much was said on the argument about the money in the hands of the defendants having been pledged, and it was

contended that the execution of the note sued upon was a waiver of the lien. The deposit, it appears, was general, and could not be the subject of a pledge in the strict technical sense.

The writing signed by the plaintiff and her husband, therefore, was an executory agreement, upon sufficient consideration, that the defendants should retain the money in their hands as a security for the goods sold to the sons of the *feme* plaintiff. It was an express charge upon the money on deposit. Whether the transaction amounted to a pledge or not, the giving of the note could not have the effect of defeating the defendants' rights, if, as they contend, it was intended merely as an evidence of the "deposit." Such was the effect of the testimony of William Wallace, apparently the only witness examined, and we think that the testimony was properly admitted.

The note is a *simple contract,* and as between the parties the consideration was open to inquiry.

The testimony was clearly competent to show, either that there was no consideration, or that the consideration was the "deposit," the subject of the agreement relied upon by the defendants. It was also competent, as we have remarked, to show that the note was given simply as an evidence of the deposit

When the consideration was thus impeached, it was incumbent on the plaintiff to have shown some other sufficient consideration. *Aldrich* v. *Stockwell*, 9 Allen, 45

This she failed to do, and as the only consideration shown having been found by the jury to be the subject of the agreement mentioned, it follows that the plaintiff is not entitled to recover.

If the instrument sued upon had been a bond, a more difficult question of evidence would have been presented.

The view we have taken disposes of the exceptions to the admission of testimony, and to the failure of the Court to instruct the jury as requested.

The charge of his Honor was, perhaps, more favorable to the plaintiff than she was entitled to, and we are of the opinion that there is no error.

No error.                              Affirmed.