GEORGE A. COONEY, Administrator of ELEANOR B.
WOODBURN, *vs.* DAVID E. WOODBURN, Adminis-
trator *c. t. a.* of CHARLES H. WOODBURN, and
SARAH WOODBURN.

*Right of the Husband to the Personal estate of his
Wife, upon her death, Intestate and without issue.*

A testator bequeathed to his daughter certain leasehold property, for her
sole and separate use and benefit, without being subject to the control or
disposal of her husband, if she should marry, or liable for his debts.
The share of the daughter under the residuary clause of the will was
also declared to be for her sole and separate use and benefit, independent
of the control of any future husband. The daughter became possessed
of the property bequeathed to her by her father's will, and subsequently
married. She died intestate and without issue, her husband surviving
her. HELD:

That the personal property of the wife, limited to her sole and separate
use by the will of her father, passed upon her death, intestate and with-
out issue, to her husband in his own right.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from the decree of the Circuit Court
dismissing the bill of the complainant. The facts of the case
are sufficiently stated in the opinion of this Court.

The cause was argued before BARTOL, C. J., MAULSBY,
MILLER and ALVEY, J.

*McHenry Howard* and *S. Teackle Wallis,* for the appellant.

This case depends entirely, upon the law of Maryland and
the recent adjudications of this Court. The English and
American decisions, relied on by the appellees and by the
Court below, do not apply. They are, for the most part,
cases where the question arose upon the construction of mar-
riage settlements, to which the husband was a party, surren-
dering his marital rights, and where it was held, properly

enough, that he gave up no more than was necessary to secure to the wife the control of her estate during coverture. Others of the cases referred to, such as *Stewart vs. Stewart*, 7 *Johns. Chy.*, 228, were decided upon the construction of the particular instruments in controversy, and under a different state of the law of husband and wife from that which exists here. In this case, the limitation of the separate estate in dispute is to be found in the will of Patrick Cooney, deceased, and is of the simplest form. He died before the marriage, (actual or contemplated) of either of his daughters, and gave the property to them, "for their sole and separate use and benefit, without being subject to the control or disposal or liable for the debts of their respective husbands, if they should hereafter marry." Is this limitation to be construed as concluding all marital rights absolutely, or as excluding them during *coverture* only? As matter of actual intention, manifested in words, it would be hard to imagine any clearer declaration of a testator's purpose to secure the property devised to his daughters, from all marital intervention whatsoever. Is there any principle of law which makes a contrary construction imperative? In Maryland there is none, whatever may be the case elsewhere. The error of the appellees, and of the Court below, consists in transplanting into our present system doctrines which are not applicable to it. There are undoubtedly English decisions, to the effect that separate estates are allowed by Courts of Equity to married women, in order to protect them during *coverture* only, and that the *jus mariti* is, therefore, not divested, but is only suspended so long as the marriage lasts, and is revived, in full force, by the death of the wife. Chancellor KENT adopts the same doctrine in *Stewart vs. Stewart*, 7 *Johns. Chy.*, 229. But Chancellor KENT has been held by this Court, in *Cooke vs. Husbands*, 11 *Md.*, 504, to have been entirely in error in his views as to the rights of *fêmes covert*, in respect to their separate estates, and the English decisions in question are at war with all our own recent adjudications, as well as the

spirit of our legislation.  The intendment of law with us, is now against the *jus mariti* in all cases, and as strongly so as it was once the other way under the common law system. Married women are now held to be *sole,* as to their rights of property, wherever the question is one of construction. When it is not, the statute makes them so.   Such is our present policy.   Thus, in *Cooke vs. Husbands,* instead of its being held that it required a positive, or controlling and direct provision to exclude the rights of the husband, exactly the reverse was determined, and the Court said that the simple limitation of property to the sole and separate use of a married woman, gave her, *ex vi termini,* all the rights of a *fême sole,* including the absolute right of alienation by deed or will, and that an express provision to the contrary was necessary, to exclude that conclusion of law and let in the rights of the husband.   The right of disposition was held to be a legal incident to the right of property, which attached to it of course, unless in terms excluded.   Following up this decision, the Court has since accordingly held, (*Buchanan vs. Turner,* 26 *Md.,* 7, and *Schull vs. Murray,* 32 *Md.,* 16,) that the rights of married women, under limitations to their separate use, do not spring from the Code, but from the limitations only, and are not affected or controlled by the Code, so that married women may dispose of their separate estate by deed, without the participation of their husbands, and by will, without their assent, in spite of the general provisions of the Code. to the contrary.   If then there be no intendment of law, as to such estates, in favor of that *jus mariti* which is secured by our own positive statutes, on what principle can there be any in favor of the *jus mariti* at common law which is against the policy of the statutes?   If the separate property of a wife be so far different and apart from her general property that the provisions of the Code in regard to her general testamentary powers do not apply to it, under the cases in 26 and 32 *Md.,* what renders the same separate property so far general as to make it subject to

the provisions of the Code, (*Art.* 93, *sec.* 32,) in respect to survivorship of the husband, and the wife's *choses in action?* If it is separate property at all, it is separate property altogether, and if one portion of the Code does not apply to it, for the reason that it is not general property, surely no other part can apply to it for the reason that it is. If the absolute and unrestrained right of alienation, to the exclusion of the husband, flows as a legal consequence, from the mere existence of the separate estate in the wife, it can only be because the estate is one which is in itself superior to all marital rights. The premises must, logically, be as large as the conclusion. The greater cannot flow from the less.

*C. L. L. Leary,* for the appellees.

Under the will of Patrick Cooney, an absolute separate use as to the leasehold property bequeathed to his daughter, Eleanor, became vested in her, with power of disposal as a *fême covert* during her life. *Cooke vs. Husbands,* 11 *Md.,* 462, 505; *Michael vs. Baker,* 12 *Md.,* 158; *Chew's Adm'r vs. Beall,* 13 *Md.,* 348, 360; *Buchanan vs. Turner,* 26 *Md.,* 5.

Upon the death of the daughter, her husband surviving her, the coverture having ceased, the separate use ceased, and the marital right of the husband attached; as survivor, at common law, he succeeded to the absolute leasehold interest. 1 *Williams on Executors,* 616, 778, 779; 2 *Kent's Com.,* 134; 1 *Bright's Husband and Wife,* 94; 1 *Cruise's Digest by Greenleaf,* 229.

Under the will of Patrick Cooney, the use or trust was not carried beyond the death of Eleanor; it could not vest in her next of kin; there was no limitation over after her death, and therefore the husband's marital right attached; the effect of the will was only to suspend this right during coverture. When it is intended to exclude the husband's marital right, an express provision to that effect, in the deed or will is necessary. *Jones vs. Brown,* 1 *Md. Ch. Dec.,* 194; *Stewart vs. Stewart,* 7 *Johns. Ch. Rep.,* 234, 239, 245, 246; *Ward vs.*

*Thompson,* 6 *G. & J.,* 357; 2 *Redfield on Wills,* 133, *sec.* 15, *and* 179, *sec.* 4; *Brown vs. Alden,* 14 *B. Monroe,* 141, 144 *to* 146 *and* 150; *Beall vs. Marshall,* 6 *Howard,* 70, 79, 80.

The intention of the testator was to confer on his daughter, Eleanor, an absolute interest in the leasehold property, and to protect that interest during coverture from the husband's interference; at the death of the wife, the succession of this property is determined, not by the will of her father, nor by the law of the State regulating the distribution of personal property as in case of intestacy, but by the provisions of the common law. *The right of the husband attaches prior and in preference to her next of kin;* the law gives it to him, not as the *representative* of his wife; but in his marital right as her *survivor.* At the death of the wife, the *quality* of the property, *as separate property,* ceases, and the marital right attaches. 1 *Bright's Husband and Wife,* 94, 95; 1 *Williams on Executors,* (5 *Am. Ed.,*) 667, *note f; Maloney vs. Kennedy,* 10 *Simon,* 254.

The right of the husband, Charles H. Woodburn, to his wife's share of *the residue* of the estate of her father, depends upon a similar principle, modified in its application, by the nature of the property which consisted at the time of the wife's death, of bank and insurance stock or *choses in action.* The language employed by the testator in disposing of the residue of his estate, shows clearly that he did not intend the separate use of his daughter to extend beyond the period of her death; nor is there here any limitation over. As *choses in action,* therefore, these stocks survived to the husband, and if he reduced them into possession during his lifetime, upon his death, *his* administrator, and not the administrator of the wife, is entitled to them. *Act of* 1798, *ch.* 101, *sub-ch.* 5, *sec.* 8; *Code, Art.* 93, *sec.* 32; 1 *Bright's H. & W.,* 79, *sec.* 8 *and* 9; *Stockett vs. Bird's Adm'r,* 18 *Md.,* 488.

The transfer by the husband, of the bank and insurance stock to his own name on the books of the respective corporations, was a complete reduction into possession. 1 *Bright's*

*H. & W.*, 50, 54, *secs.* 6 *and* 7, *p.* 55, *secs.* 9 *and* 10 ; *Wildman vs. Wildman*, 9 *Vesey*, 174 ; *Turton vs. Turton*, 6 *Md.*, 381 ; *Hill on Trustees*, (2d *Am. Ed.*,) *margl. p.* 415, note (1.)

ALVEY, J., delivered the opinion of the Court.

The question in this case arises upon the effect of a clause in the will of Patrick Cooney, who died in September, 1849. The will was made in April, 1849.

The testator left several children surviving him, and among them Eleanor B., the appellant's intestate, to whom was bequeathed, by her father, certain leasehold property in the city of Baltimore, for her sole and separate use and benefit, without being subject to the control or disposal, or liable for the debts, of her husband, if she should thereafter marry; and such of the testator's property as passed to his daughter Eleanor B. under the residuary clause of the will, was also declared to be for her sole and separate use and benefit, independent of the control or disposal of her husband, if she should marry. At the time of the death of the testator, the daughter Eleanor B. was unmarried; but she became possessed of the property bequeathed to her by her father's will, and in August, 1854, was married to Charles H. Woodburn, the testator of the appellees. She died intestate, and without issue, in 1864, her husband surviving her. Her property was all taken possession of by the surviving husband, without administration; and in August, 1866, he died, leaving a will, by which he gave his property to his mother, one of the appellees, and David E. Woodburn, his brother, became administrator of his estate. In 1867, George A. Cooney, the appellant, obtained letters of administration upon the estate of his sister Eleanor B. Woodburn, and in his character of administrator claimed the property that had been bequeathed to his intestate by her father, and which had passed into the possession of her surviving husband at the time of her death. The bill in this case is filed to enforce that claim. And the single question argued on this appeal is, whether the personal

property of the wife limited to her sole and separate use by her father's will, passed, upon her death intestate and without issue, to her husband, in his own right, or to her administrator?

It is contended on the part of the appellant that, according to the intention of the testator, as manifested in the terms of his will, the daughter took the estate bequeathed to her as *féme sole*, and that she bore that relation to it during life, notwithstanding her marriage, and that all the marital rights of the husband were excluded, as well after the death of the wife as before, and that, consequently, the property devolved on the appellant as administrator of the wife; while on the part of the appellées it is contended, that during the coverture the marital rights of the husband in the property were only suspended, and that upon the death of the wife, the separate quality of the property ceased, and the marital rights of the husband attached, as if the separate use had never been declared.

In determining this question it is important to observe the terms in which the bequests were made. They gave the property to the legatee, then a single woman, for her sole and separate use, without being subject to the control or disposition of her future husband, but without any limitation over whatever, or the employment of any terms to indicate how the property was to pass on the death of the daughter; nor is there any limitation as to the mode of assignment or appointment. The legatee was clothed therefore with general power of alienation as *féme sole*, both before and after marriage. *Cooke vs. Husbands*, 11 *Md.*, 492.

The separate estate, the mere creature of a Court of Equity, is allowed and maintained for the benefit and protection of the wife, against the improvidence and misfortunes of the husband, and consequently it has its existence and operation *only during the period of coverture;* and whilst the legatee in this case remained discovert the separate estate was dormant and without effect, though it was capable of arising, and did

arise, upon the happening of the marriage contemplated by the will; and upon the termination of the coverture by the death of the wife, such separate estate became absolutely void. *Tullett vs. Armstrong*, 1 *Beav.*, 1, *Same Case, on appeal*, 4 *Myl. & Cr.*, 397.

It was certainly competent to the testator to have not only excluded the marital rights of the husband during the coverture, but, by apt terms, to have carried such exclusion beyond that period, and excluded them altogether. There is nothing however in the terms of the will to manifest clearly such intent. The husband is the party declared by law to be entitled in the absence of some clear and positive limitation to exclude him, and if the separate estate terminated with the death of the wife, and there be no limitation of the estate inconsistent with the rights of the husband, who other than the husband can be entitled? His rights were simply suspended, in reference to this particular property, during the coverture. It is true, the property could have been disposed of by the wife by virtue of the existence of the separate estate, and thus the husband's suspended rights could have been entirely defeated; but that not having been done, upon the death of the wife, those rights were revived and became active.

It being conceded that the husband would be entitled to the property in question if it were not for the effect attributed to the will of Patrick Cooney, it becomes purely a question of construction; and as there is nothing on the face of the will, apart from the usual formula of declaring the separate estate during coverture, it follows that the husband's rights, though suspended up to the time of the death of his wife, have not been entirely defeated. The will making no disposition of the property on the death of the wife, and providing only for her exclusive dominion over it during coverture, "the right of the husband, as survivor, is a fixed and stable right, over which the Court has no control, and of which he cannot be divested. The settlement cannot be extended, *by construction*, beyond the just and fair import of its provisions;

and, clearly, the Court cannot create a settlement, or disposition of property, in violation of the *jus mariti*, when none has been made by the party." So declared Chancellor KENT, in the case of *Stewart vs. Stewart*, 7 *John. Ch. Rep.*, 229; and the reasoning and principle of construction of that case have been fully sanctioned and approved by the Courts of this State, in *Ward vs. Thompson*, 6 *Gill & John.*, 357; *Waters vs. Tazewell*, 9 *Md.*, 291, and *Jones vs. Brown*, 1 *Md. Ch. Dec.*, 191; which cases govern and control this.

Being of opinion that the surviving husband was entitled to the personal property of his wife at the time of her death, we shall affirm the decree appealed from, with costs to the appellees.

*Decree affirmed.*