LILLY V. WINCHESTER (now LILLY V. CONLYN) and THOMAS A. CONLYN, her husband *vs.* ARTHUR W. MACHEN, Trustee, and others.

*Construction of Post-nuptial deed of Trust securing Property of the Wife to her Separate use—Right of Wife thereunder to Demand a Reconveyance.—Effect of Second marriage Upon such Right.— Contingent interest.*

Mrs. L. V. W. and S. M. W. her husband conveyed all her property to a trustee upon the following trusts, viz., to pay over the

income to Mrs. W. for her sole and separate use during her life : and, upon her death, in further trust to hold the *corpus* of the estate for such person or persons as she might, by last will and testament, appoint, and in default of appointment then in trust for any child or children she might leave surviving her ; and in the event of her dying without leaving a child or children surviving her, and without exercising her power of appointment, in trust, as to one equal moiety of all said estate for her said husband S. M. W. absolutely, and as to the other moiety in trust for her next-of-kin on the part of her father. The deed further provided ''that, in the event of the said L. V. W., surviving the said S. M. W., the said trustee or any successor or successors in the trust, shall, if requested by the said L. V. W., after the decease of her said husband, and being discovert, convey, transfer and deliver up all the property and premises aforesaid * * * to her, the said L. V. W. for her absolute use and benefit, and clear and discharged of all the trusts by these presents created or declared.'' In June, 1879, S. M. W.died in a distant State, leaving Mrs. W. and an infant son, the only issue of his marriage, surviving him. Sometime thereafter, being still discovert, she requested the trustee to reconvey the trust property to her; but the trustee did not comply with that request, because he had no direct or personal knowledge of the fact of S. M. W's death. Upon a bill filed against said trustee and her infant son, by Mrs. W. to procure such conveyance, evidence was taken clearly establishing the fact of her said husband's death. During the pendency of said proceedings Mrs. W. married again and had another child. A supplemental bill was filed setting forth the former proceedings, the second marriage of Mrs W. and the birth of another son. The trustee answered this bill, and both infant children having been made parties, answered by guardian. HELD :

1st. That by the express terms of the deed of trust Mrs. W. had she not married the second time, would have been entitled, after the death of S. M. W., and after a demand upon the trustee, to a reconveyance of the trust property absolutely freed and discharged from every trust.

2nd. That the deed vested no estate in her children, but as to them created only a contingent interest—a mere expectancy—which either an appointment by last will and testament or a reconveyance to herself after the death of S. M. W., as provided in the deed, would completely prevent from ever taking effect.

3rd. That this contingent interest could of itself, when the event had occurred which, by the terms creating that interest, was intended to defeat it, afford no valid objection to the reconveyance.

4th. That Mrs. W's right under the deed to require a reconveyance to herself depended upon her making a request to that effect "after the decease of her said husband" S. M. W., and upon her "being discovert" as to the marriage, subsisting at the date of the deed, and none other.

5th. That when she demanded the reconveyance, her right to have it was clear and absolute, and her second marriage placed her under no disability as to the enforcement of that right.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, FOWLER, McSHERRY, and BRISCOE, J.

*Archibald H. Taylor,* (with whom was *George Savage,* on the brief,) for the appellants.

*William L. Hodge,* for the infant appellees.

*Arthur W. Machen,* filed a brief on his own behalf as trustee.

McSHERRY, J., delivered the opinion of the Court.

In May, eighteen hundred and seventy-five, Lilly V. Winchester and her husband, Samuel Mactier Winchester, executed a deed conveying to Arthur W. Machen, Esq., certain property, to be held by him upon the following trusts, viz., to pay over the rents, profits, income, and dividends to Mrs. Winchester for her sole and separate use during her life; and, upon her death, in further trust, to hold the *corpus* of the estate for such person or persons as Mrs. Winchester might, by last will and tes-

tament, appoint; and, upon her failure to make an appointment, then in trust for any child or children she might leave surviving her; and in the event of her dying without leaving a child or children surviving her, and without exercising her power of appointment, in trust, as to one equal *moiety* of all said trust estate, for her said husband, Samuel Mactier Winchester absolutely, and as to the other moiety in trust for the next-of-kin of Mrs. Winchester on the part of her father.    The deed further provided "that in the event of the said Lilly V. Winchester surviving said Samuel Mactier Winchester, the said trustee, or any successor or successors in the trust, shall, *if requested by the said Lilly V. Winchester after the decease of her said husband and being discovert*, convey, transfer and deliver up all the property and premises aforesaid * * * * to her, the said Lilly V. Winchester, for her absolute use and benefit, and clear and discharged of all the trusts by these presents created or declared." In June, eighteen hundred and seventy-nine, Mr. Winchester died in Los Animas County, Colorado, leaving Mrs. Winchester and an infant son, the only issue of his marriage, surviving him.    Some time thereafter, being still *discovert* she requested the trustee to reconvey the trust property to her; but the trustee did not comply with that request because he had no direct or personal knowledge of the fact of Mr. Winchester's death.    He was perfectly willing to make the conveyance upon being satisfied that the event had occurred upon the happening of which he was authorized by the terms of the deed to reconvey the property to Mrs. Winchester.    Thereupon Mrs. Winchester filed a bill in the Circuit Court of Baltimore City against Mr. Machen and her infant son, alleging the death of her husband, the request made that the trustee reconvey to her, and his failure to comply therewith because of his want of evidence as to Mr. Winchester's death, and praying that a decree might be

passed ordering the reconveyance to be made. The infant defendant answered by guardian. Mr. Machen answered, admitting all the averments of the bill to be true except that as to the death of Mr. Winchester. This he neither admitted nor denied, but asked that it be proved, and he submitted himself to such decree as the Court might pass. Commissions were thereupon issued— one to the standing commissioner of the Circuit Court, and one to a special commissioner in Denver, Colorado. Testimony was taken under each, and the death of Mr. Winchester was conclusively proved. The first commission was returned on April the seventh, eighteen hundred and eighty-three, and the second on April the 27th of the same year. On April the fifth, eighteen hundred and eighty-three, Mrs. Winchester married Thomas A. Conlyn. No further steps were taken in the cause until December the twelfth, eighteen hundred and ninety-one, when a supplemental bill was filed setting forth the former proceedings, the second marriage of Mrs. Winchester and the birth of another son. The trustee answered this bill, and both the infant children having been made parties, answered by guardian. Some additional, but not material, testimony was taken, and the case was submitted for a decree. A *pro forma* decree was passed dismissing both the original and the supplemental bill, and thereupon this appeal was taken.

Had Mrs. Winchester, now Mrs. Conlyn, not married the second time there can be no question that she would have been entitled, under the express terms of the deed of trust, after the death of Mr. Winchester and after a demand upon the trustee, to a reconveyance of the trust property absolutely freed and discharged from every trust. This right was secured to her by the deed itself in perfectly clear and unambiguous language. The deed vested no estate in her children, but as to them created only a contingent interest—a mere expectancy—

which either an appointment by last will and testament
or a reconveyance to herself after Mr. Winchester's
death, as provided in the deed, would completely prevent
from ever taking effect.    This contingent interest being
thus determinable, and being entirely dependent upon
Mrs. Winchester not demanding a reconveyance after
the death of Mr. Winchester, can, of itself, when the
event has occurred, which, by the terms creating that
interest, was intended to defeat it, afford no valid objec-
tion to the reconveyance.    Does her second marriage,
then, after demand made upon the trustee and after the
bill had been filed but before a decree had been signed,
deprive her of the right to have a reconveyance?  Stated
in another form, did the grantors contemplate, and did
the deed provide for, the continuance of the trust in the
event of a second marriage, if no reconveyance were made
before such second marriage took place?   This is the
only substantial question in the case and its solution
must be found in the deed itself.

In 2 *Perry on Trusts, sec.* 653, the general doctrine
applicable to analogous cases is thus stated, "If property
is settled to the separate use of a woman, and the sepa-
rate use is *intended* to be confined to a particular mar-
riage, and the husband dies, and the widow marries
again, the second husband will take his common law
rights in the property.   But, if the separate use is
plainly intended by the instrument to extend to all fu-
ture marriages, the intent will be carried into effect; so
long as it can be applied to the property, and to all the
income * * * *   Whether the separate use shall con-
tinue through several marriages is wholly a matter of
intention."    Thus in *Knight vs. Knight,* 6 *Sim.,* 121, by
a marriage settlement money and stock were assigned to
trustees in trust to receive the income during the life of
the lady, and pay the same to her for her separate use,
or as she should appoint, *notwithstanding her coverture,*

but no payment to be made by anticipation, and it was declared that the income should not be subject to the debts, &c. of R. G. *her intended husband,* and after her decease, in case he should survive, in trust to permit him to receive the income for his life, &c. The husband died in the life-time of his wife, and she married again. It was held that the provision for the separate use of the lady without anticipation, was confined to the first marriage. So in *Benson vs. Benson,* 6 *Sim.,* 126, a testator directed the interest of ten thousand pounds to be for the separate use of his daughter Jane Lane the wife of John Bradford Lane for her life, free from the debts of her husband. The husband died and his widow married again. It was held that the trust for her separate use ceased on the death of her first husband.

A careful examination of the deed, signed very shortly after the marriage, convinces us that none of the parties to it contemplated at the time of its execution the contingency of a second marriage on the part of Mrs. Winchester; and that, therefore, the coverture to which the deed refers, and to which it was intended to apply, was the then existing coverture and none other. It speaks throughout of "Samuel Mactier Winchester" and her "said husband," but contains no provision whatever which includes, even by implication, any future husband, though minutely dealing with the event of her survivorship and her right, incident thereon, to demand a reconveyance of her property. It is fairly inferable from the context of the whole instrument that its chief and predominant purpose was to protect the wife's estate from the improvidence, or, perhaps, incapable management, of her then husband, Mr. Winchester. It studiously avoids the use of any words giving to a future husband, as it gave to Mr. Winchester by name, an interest in the property in the event of her dying in the life-time of such future husband without issue, and without having

exercised her power of appointment.    It refers, from first
to last, only to the then subsisting marriage which had
been solemnized  but seven months prior  to the date of
the deed.    In the face of such a manifest intention, dis-
closed by the paper itself, to restrict the terms of the
deed to the only marriage then in the minds of the par-
ties, we must read the words "and being discovert," in
the clause herein before transcribed, as merely a repeti-
tion in different language of the same condition expressed
in the antecedent phrase, "after the decease of her said
husband."   In a word, Mrs. Winchester's right to re-
quire a reconveyance to herself depended upon her mak-
ing a request to that effect "after the decease of her said
husband," Samuel  Mactier Winchester, and upon her
"being discovert" as to *that* marriage—not upon her
being discovert as to some other and different marriage
not contemplated when the deed was made, and  not re-
ferred to, described in, or embraced by the terms of the
conveyance.    The opposite conclusion would enlarge the
express condition, viz., the decease of Samuel Mactier
Winchester, by the  superaddition of another, viz., the
death of a future husband, if her request for a reconvey-
ance had not been complied with before a second mar-
riage.    This would give to the deed an effect not in-
tended by the parties to it, but wholly at variance with
the obvious purpose and design that prompted its exe-
cution—the protection of the wife's property from her
then husband's improvidence.

When she demanded the reconveyance her right to
have it was clear and absolute, and her second marriage
placed her under no disability as to the enforcement of
that right.   She is, therefore, still entitled, and the
decree dismissing her bill will be reversed, and the cause
will be remanded for further proceedings in conformity

with this opinion.  The costs in both Courts to be paid out of the trust estate.

> *Decree reversed, and cause remanded, the costs in both Courts to be paid out of the trust estate.*

(Decided 16th March, 1892.)