WALTER SNYDER *vs.* WILLIAM E. JONES.

*Estate of Surviving Husband in Wife's Real Estate Under Former Statute.*

A woman who was entitled to a vested remainder in fee in certain real estate after the expiration of an existing life estate married and died intestate without having had issue or actual seisin of the land, leaving her husband surviving. At that time the Code of 1860, Art. 45, sec. 1, was in force and it was thereby provided that a married woman should hold the property belonging to her at the time of her marriage and that subsequently acquired for her separate use, with power to devise the same, "provided that if she die intestate and leaving children, her husband shall have a life estate in her property, real and personal, but if she die intestate leaving no children, her husband shall have a life estate in her real property and her personal property shall vest in him absolutely." *Held*, that the vested estate in remainder was "property belonging" to the married woman notwithstanding the intervening life estate and that her surviving husband is entitled to a statutory life estate therein.

Appeal from a decree of the Circuit Court for Anne Arundel County (REVELL, J.)

The cause was submitted to the Court on briefs by:

*Frank H. Stockett,* for the appellant.

*Robert Moss,* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is a case stated under equity rule 47, as embodied in sec. 184, Art. 16 of the Code of Public General Laws. The facts are as follows: Charles Clagett died intestate in 1847, seized and possessed of real estate and leaving a widow and three children. His widow, whose name was Eliza, married in 1850, M. S. Robinson. The children were, Mary R., Annie C., and Samuel T. Clagett. Samuel T. Clagett died in 1852 intestate and unmarried and his one-third undivided in-

terest in his father's real estate thereupon vested in his two sisters, subject to the dower of his mother. In September, 1860, Mary R. Clagett, who then owned by descent from her father and brother a one-half undivided interest in the real estate left by her father, married Walter Snyder, and on May 23rd, 1863, she died intestate, leaving her husband and an infant daughter named Carrie, surviving her. In 1865, Annie C. Clagett filed a bill in equity in the Circuit Court for Anne Arundel County against her mother and the latter's second husband, and against Walter Snyder the surviving husband of her deceased sister, Mary R., and against Carrie Snyder, the infant daughter of that deceased sister, praying for a partition of the lands of which Charles Clagett had died seized and possessed. In that proceeding, amongst other things, it was adjudged, ordered and decreed that Walter Snyder in right of his late wife, Mary R. Snyder should hold in severalty and not jointly, or in common with the other parties to the suit for and during his natural life, with remainder in fee to Carrie Snyder, the infant child and sole heir at law of the said Mary R. Snyder, deceased, all that parcel of land in the proceedings mentioned, which was described in the return of the Commissioners and the plat and the certificate of survey accompanying the same, as lot No. 1; fifty-one and a half acres, part thereof, being encumbered with the interest of the widow, Eliza Robinson, therein. Annie C. Clagett afterwards married Richard T. Hardesty and died March 19th, 1899, without children, but leaving her husband surviving her. Carrie Snyder, the granddaughter of Charles Clagett, married William E. Jones in February, 1881, and died intestate and without issue in December of the same year. In July, 1900, a bill was filed to procure a decree directing the sale of the real estate of Annie C. Hardesty, formerly Annie C. Clagett, and all her right, title and interest in lot No. 1, above alluded to, was sold to Walter Snyder, who already had a life estate therein in virtue of his survivorship as the husband of Mary R., and under the decree in the partition proceeding. The question for decision is, what interest, if any, has William E. Jones, the surviving hus-

band of Carrie Snyder, in lot No. 1, which had been awarded
to Walter Snyder for life with remainder in fee to his aforesaid
daughter, Carrie?

Carrie Snyder as the sole heir at law of her mother, Mary
R., took, upon the latter's death, a vested fee-simple estate in
an undivided one-half of her grandfather's property, subject to
the dower of her grandmother in part thereof and also subject
to the life interest of her father, Walter Snyder.    When the
decree of partition was passed in 1866 she was allotted in sev-
eralty a fee-simple estate in lot No. 1 in remainder, subject to
the same life estate and, as to a part, subject to the dower of
her grandmother.    She subsequently married and thereafter
died intestate.    The title having descended to her on the part
of her mother, when she, Carrie, the daughter of Walter Sny-
der and the wife of William E. Jones, died intestate, the estate
which she thus acquired vested in her aunt, her mother's
sister, Annie C.  *Article 47 of Code of 1860.*  The interest of
the latter was sold after her death and the question is, Did the
absence of a seizin, or actual possession by Carrie Snyder,
together with the intervening life estate of Walter Snyder, her
father, and the intervening dower of her grandmother prevent
her husband, William E. Jones, from acquiring a life estate in
lot No. 1, subject to the prior life estate expressly allotted to
Walter Snyder, the surviving husband of Mary R. Snyder and
the father of Carrie ?

If the common law prevailed there would be no difficulty
in answering the question in the affirmative.    A tenancy by
the curtesy of England is defined by Blackstone to arise where
a man marries a woman seized of an estate of inheritance, that
is, of land and tenements in fee-simple or fee-tail, and has by
her issue born alive, which was capable of inheriting her es-
tate.   2 *Bl. Com.* 126.    The same learned commentator, ob-
serves page 127, there are four requisites necessary to make a
tenancy by the curtesy; marriage; seizin of the wife; issue,
and death of the wife.    The marriage must be canonical and
legal; the seizin of the wife must be an actual seizin; the pos-
session of the land must not be a bare right to possess, which

is a seizin in law, but an actual possession, which is a seizin in deed. And therefore, a man cannot be tenant by the curtesy of a remainder or reversion.

When Mary R. Clagett married Walter Snyder in September, 1860, she owned, as stated above, a one-half undivided interest in the real estate of which her father died, seized and possessed, subject to her mother's dower. At that time the Code of 1860 was in force. By secs. 1 and 2 of Art. 45 of that Code it was enacted that the property, real and personal, belonging to a married woman at the time of her marriage, or which she might subsequently acquire in the modes · there mentioned, she should hold for her separate use with power of devising the same as fully as if she were a *feme sole,* "provided that if she die intestate and leaving children her husband ·shall have·a life estate in her property, real and personal, but if she die·intestate leaving no children her husband shall have a life estate in her real property and her personal property shall vest in him absolutely." This legislation completely destroyed the common law tenancy by the curtesy; *Mason* v. *Johnson,* 47 Md. 347, though earlier enactments protecting the property of the wife from seizure to satisfy debts of the husband did not interfere with that tenancy. *Logan* v. *McGill,* 8 Md. 469. She had the right to·devise her real estate as fully if she were a *feme sole. Shull* v. *Murray,* 32 Md. 9. That right was wholly inconsistent with such a tenancy, because it permitted her to give her property, by will, to whom she pleased, to the total exclusion of her husband. The right to thus dispose of her property continued uninterruptedly until the adoption of the Act of 1898, ch. 457. But the power to exclude, by devise, the husband from any interest in the wife's real estate, was not the only feature of the legislation embodied in the Code of 1860. If she died intestate and leaving no children her husband took a life estate in her realty and her personal property vested in him absolutely, and this, too, without reference to her ever having had issue or ever having been seized in deed. A statutory life estate was thus substituted for the common law tenancy by the cur-

tesy. And that interest is now called the husband's dower. *Act 1904, ch. 151.* If the tenancy by the curtesy no longer exists by reason of the legislation to which we have alluded, then the qualities and characteristics incident to and insaparable from such a tenancy at the common law, are not included in the components of the distinctly different statutory life estates created by the Code of 1860. Indeed they are of necessity prescinded from it. It follows, therefore, that only such conditions must exist as the statute prescribes, to support the last-named estate, and that the attributes which are predicable of the common law tenancy are no longer requisite. What then was necessary after the Code of 1860, and prior to the adoption of the Act of 1898, ch. 457, to entitle the husband to a life estate in the real property owned by the wife? The inquiry is confined to the period of time just named, because whatever rights accrued to William E. Jones, the surviving husband of Carrie Snyder, arose under the statute law then in force.

The Code of 1860 dealt with the real and personal property *"belonging"* to a woman at the time of her marriage. A vested fee-simple estate in remainder, the title to which she held, was real property *"belonging"* to her, notwithstanding an intervening life tenancy deferred her actual possession of it. It was an estate which she could devise and which, if she died intestate, would descend to her heirs at law. But further than that the statute declared without qualification that if a married woman to whom real property *"belonged"* died intestate, her husband should have a life estate in that property which thus belonged to her. There was no provision that she should be seized in deed, or that she should have had issue born alive during coverture, to entitle the husband to a life estate. The property, real and personal, belonging to a woman at the time of her marriage, is a universal proposition or declaration and must, according to well understood methods of reasoning, be taken in its widest sense, and therefore, must be held to exclude every qualification, restriction or exception. It is equivalent to saying, *all* the property, real and personal, "belong-

ing" to a married woman, and consequently includes a vested remainder in fee, as well as a fee-simple estate in possession, because the former is just as certainly property *belonging* to a married woman as is the latter, though the one differs from the other only in the single circumstance, not of ownership, but of possession.

We conclude then that according to the plain terms of the Code of 1860, the statutory life estate created thereby superseded and took the place of the common law tenancy by the curtesy in instances where marriages were solemnized after the Code went into effect. As it went into effect on January 12th, 1860, and was in full force in September of that year, when Mary R. Clagett married Walter Snyder, its provisions were applicable to the property, real and personal, then belonging to her, and measured and determined his marital rights with respect to that property. As the same provision of the same Code, slightly modified, but not in a way to affect the pending question, was the law of the State when Carrie Snyder married William E. Jones in February, 1881, and when she died in December of that year, the right of William E. Jones, the surviving husband, to a statutory life estate in the property which belonged to his wife, Carrie, must be also measured and determined by its terms; and as those terms gave him a life estate in the property, real and personal, belonging to her at the time of her marriage to him, he became entitled, upon her death intestate, to a life estate, notwithstanding the property which belonged to her was only an estate in remainder, though a vested remainder in fee, and notwithstanding there was an intervening life estate in her father.

Major Venable in his Syllabus on Real Property takes the same view we have stated with respect to the effect of the Maryland legislation on the common law tenancy by the curtesy. The Court below held that Jones was entitled to a life estate and we affirm that decree for the reasons we have given.

> *Decree affirmed with costs above and below.*

(Decided November 17th, 1904.)