WILLIAM H. BISHOP, JR., ET AL. *v.* SAFE DEPOSIT & TRUST COMPANY ET AL., TRUSTEES

[No. 45, April Term, 1936.]

*Decided June 10th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*George F. Flentje, Jr.,* for the appellants.

*Douglas H. Gordon,* with whom were *Brune & Gordon* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

The appeal in this cause is from a decree to enforce

the specific performance by the vendees of their contract to buy of the vendors a certain lot of land. The question is whether or not the vendors, who are trustees, can, without the joinder of the husband of a *cestui que trust,* convey to the vendees a good and merchantable title to the land sold and intended to be conveyed.

A certain Douglas H. Gordon was married on June 20th, 1897, to Elizabeth Clarke Gordon. He died on April 8th, 1918, leaving his wife surviving. By the eleventh paragraph of his will he devised and bequeathed to his wife, if she survived him, one-third of all the residue of his estate "for her sole and separate use, and free from the control of any husband which she may at any time have, provided, however, as a condition of this devise and bequest, that my (his) said wife shall consent that the provision made for her by the marriage settlement or antenuptial contract entered into between her and me (him) prior to our (their) marriage shall be reckoned to be and considered a part of the residuum of my (his) estate, and shall be added to the property otherwise constituting the same before the division thereof, herein provided for shall be made." After the will was executed and before the death of its maker, the condition imposed was duly complied with by the execution by the husband and wife of a deed whereby the marriage settlement or antenuptial contract was rescinded and canceled. Upon the death of the testator, the property embraced in the annulled marriage settlement became a part of the residue of the testator's estate, and thus formed a portion of the whole residue of which a third passed to the widow in accordance with the terms of the will.

The widow later married, on April 26th, 1933, one Alexander Gordon, from whom she was on January 5th, 1935, granted a divorce *a mensa et thoro,* which, however, left the marital rights of the parties in each other's real and personal property undisturbed. *Hokamp v. Hagaman,* 36 Md. 511, 517. On February 20th, 1936, Elizabeth Clarke Gordon began a proceedings in equity which set forth the devise and bequest to her by the will

of her first husband, and presented a detailed statement of all the property which she had acquired, less certain gifts which she had bestowed upon her children; some other items of which she had made earlier disposition; and the land which was not within the State of Maryland. The object of these *ex parte* proceedings was to avail herself of the right to have the court assume jurisdiction of the trust; to appoint a trustee of her sole and separate estate; and, in this appointment, to have declared the uses and trusts upon which the trustee should hold her property. By these proceedings, the Circuit Court of Baltimore City, a court of equity, passed a decree on February 20th, 1936, in which trustees were appointed to hold the described sole and separate estate of Elizabeth Clarke Gordon, which she had so acquired under the devise and bequest of her first husband, for her benefit during the term of her natural life, and then over to such executors as she might by her last will appoint, or, if she should die intestate, to her administrators, wholly free and clear of the trust in the decree declared, and subject to her testamentary disposition, with full power to the trustees to sell, assign, convey, mortgage, lease, or otherwise dispose of such property and estate, or any of the same, and for such prices and on such terms as might, in their discretion, be deemed desirable or proper in the interest of Elizabeth Clarke Gordon, with full power of investment and reinvestment. The trustees were authorized to execute and carry out all the powers conferred, without applying for or obtaining the authority of the court or its approval or ratification. The other terms and provisions of the trust do not require statement, as they do not affect the questions on this record.

Among the items of property which were included in the trust declared for the use and benefit of the devisee and legatee, Elizabeth Clarke Gordon, were undivided one-third interests in certain parcels of land, whose remaining undivided two-thirds interests were held in trust by the trustees of the remaining two-thirds of the real and personal property of which the testator died

seised and possessed. These trustees of the undivided one-third and of the two-thirds interests in one of the parcels of land united as vendors and, in pursuance of their respective powers of sale, sold to William H. Bishop and wife, at an agreed price, and, as an entirety, all their several interests in this parcel. The vendors tendered their duly executed deed conveying the parcel to the vendees, who declined to pay the purchase price and to accept the deed, on the single ground that the title was bad because the second husband of Elizabeth Clarke Gordon had not united in the deed as a grantor. The refusal is based upon the contention that the devisee had acquired a statutory separate legal estate under the will of the first husband, and that in this legal estate, upon her later marriage, there vested in the second husband the inchoate marital rights of a husband as the potential survivor of his wife. If this be true, the title would not be good and merchantable without the release by deed of the interest of the husband. Code, art. 45, sec. 12. The vendees rely upon the statutory provision in force at the time of the second marriage.

In many instances the rigor of common law principles afforded the wife no protection nor remedy against the improvidence or misfortune of the husband, so the courts of equity early devised remedies by which all or some portion of the property of the wife might be withdrawn from the operation of the rules of the common law and preserved for her benefit. The means adopted were either a general trust for a woman, such as might be created for any other individual, or a special trust for a woman, whose features would be particular provisions as to the ownership and enjoyment of the property or its income, and as to the rights over it of any existing or future husband. *Perry on Trusts* (7th Ed.), sec. 625. It is the second form of a trust for women that was created by the will of Douglas H. Gordon. It devised and bequeathed to his surviving wife certain real and personal property whose ownership and enjoyment was limited to her sole and separate use, and so as to be free

from the control of any husband which she might at any time have. Here the gift did not become effective until the then husband's death, when the surviving wife would become a widow, so it was a devise and bequest to a single woman for her sole and separate use; and, before marriage, the widow had the same control over the property given as if it had been devised and bequeathed to her absolutely. Sections 646, 646a, 648. The limitation to her sole and separate use and free from the control of any husband which she might have only took effect upon her marriage. *Cooney v. Woodburn* (1870), 33 Md. 320, 326, 327.

As to a later husband, the testator was a stranger who had made a gift of property to an unmarried woman upon certain limitations in the event of her marriage. Such conditions or limitations of property are sanctioned in equity; and, whether the woman be married or single, the trust does not fail if made without a trustee. The husband would become her trustee if the woman be married, and when she married if she be single when the trust was created. *Perry on Trusts* (7th Ed.), secs. 647, 652, 653, 654; *Waters v. Tazewell*, 9 Md. 291, 308; *Winchester v. Machen*, 75 Md. 538, 543, 23 A. 956; *Lewin on Trusts*, *756. Equity would not permit a trust to fail because a trustee was not specifically named. Furthermore, on application a court of equity may assume jurisdiction of the trust and appoint a trustee. For various reasons, some one other than the husband might become preferable or necessary in the care, custody, and management of the corpus of the trust, and the use and disbursement of its income and receipts. *Knight v. Knight*, 11 Jur. (N. S.) 618; *Perry on Trusts* (7th Ed.), sec. 677; *Richardson v. Stodder*, 100 Mass. 528. When acting with respect to property so settled to her sole and separate use, a married woman is competent to act in all respects as if she were a *feme sole*. So, unless restricted by the instrument under which she holds, she may sell and convey and devise and give her equitable sole and separate estate in real and personal property as if she were

single. *Perry on Trusts* (7th Ed.), sec. 655. If this were not true, the intention of the maker of the instrument under which she held would be defeated in large part with respect to her real estate, since the power of the husband to abridge or defeat in part her conveyance or will would be an exercise of control of property, which to the extent of this control would cease to be a sole and separate equitable estate.

As was said *arguendo* in *Cooke v. Husbands* (1857), 11 Md. 492, at page 505: "We think that there is a principle underlying this branch of jurisprudence which should not be disregarded, and that is, that the right to dispose accompanies the ownership of property, which cannot be fettered by intendment, however this may be done by express words; and as these settlements are creatures of equity, designed to confer rights on married women not enjoyed at law, and may be made to express what the parties intended, the *feme covert* should be considered as having the power of disposal, unless a different intent be manifested by the instrument"; and it was so expressly decided. 11 Md. 492, at page 506.

In *Buchanan v. Turner* (1866), 26 Md. 1, at page 5, the court said that in *Cooke v. Husbands, supra,* "it was for the first time definitively declared to be law in Maryland 'that where property is given to a *feme covert* to her separate use simply, without restricting her power of disposing of it, or prescribing the mode in which that power is to be exercised, she may act in reference to the disposition of it as a *feme sole.*' This decision was followed in *Michael v. Baker,* 12 Md. 158, *Chew's Admrs. v. Beall,* 13 Md. 348, and in other cases, and must be considered as the settled law of the State." *Schull v. Murray* (1870), 32 Md. 9, 16; *Cooney v. Woodburn* (1870), 33 Md. 320, 326.

The vendee is agreed that this is a correct statement of the prevailing law until the adoption of the Code of 1860 (article 45) which created what may be conveniently called a statutory separate estate in a married woman. By this change, with some later amendments,

and with the omission of the provisions with respect to the creditors of a husband who has transferred property to his wife, all the property, real and personal, belonging to a woman at the time of her marriage, and all the property which she may acquire or receive after her marriage by purchase, gift, grant, devise, bequest, descent, or in course of distribution, by her own skill, labor, or personal exertion or in any other manner, shall be protected from the debts of her husband, and not in any way liable for the payment thereof, and she shall hold to her separate use, with power of devising the same as fully as if she were a *feme sole,* or she may convey the same by a joint deed with her husband, provided that, if she die intestate and leaving children, her husband shall have a life estate in her property, real and personal, but if she die intestate, leaving no children, her husband shall have a life estate in her real property, and her personal property shall vest in him absolutely. Code of 1860, art 45, secs. 1 and 2; Acts 1874, ch. 57; Acts 1890, ch. 394; Acts 1892, ch. 267; Acts 1892, ch. 586. It was further provided that it should not be necessary for a married woman to have a trustee to secure to her the sole and separate use of her property, but, if she desires it, she may make a trustee by deed, her husband joining in the deed, or she may apply to a court of equity and have a trustee appointed, in which appointment the uses and trusts for which the trustee holds the property shall be declared. *Ibid,* sec. 3.

The language used in sections 1 and 2 of article 45 of the Code of 1860 was general, and came before the court for consideration in *Hall v. Eccleston* (1873), 37 Md. 510. In that case a husband and wife had entered into a contract in writing to pay money, and for its performance had specifically bound themselves and their separate and individual estates. The husband had no property out of which the debt could be made, but his wife was the owner of real estate on which she and her husband had placed mortgage liens for their other debts. A decree of foreclosure was obtained under one of the mortgage

deeds, and the unsecured creditor brought suit to enforce the debt as an equitable charge or lien on the wife's separate legal estate. The defendants demurred, and the question raised was whether the land of the wife, which she held under the statute as her separate estate, could be made subject to a lien in any other mode than by a deed in which the husband must unite. The contention was that, as by section 2 of article 45 of the Code of 1860 there had been prescribed this "particular mode of alienation or disposition of the wife's separate estate acquired and held under this provision of the statute, no other mode exists, and that, to allow the estate thus held to be charged and made liable to sale for the payment of debts * * * would contravene the policy and clear intention of the law." 37 Md. 510, at pages 518, 519. The court rejected this interpretation of the statutory law, and held that the court would enforce the contract on the part of the wife by treating it as constituting an equitable lien or charge on her statutory separate estate, and, upon a failure to pay the debt, decree a sale of the land of the wife for its satisfaction. 37 Md. 510, at pages 521, 522. See *Brundige v. Poor*, 2 G. & J. 1; *Frostburg Perpetual Building Assn. v. Hamill*, 55 Md. 313, 315; *Norris v. Lantz*, 18 Md. 260; *Klecka v. Ziegler*, 81 Md. 482, 485, 32 A. 241.

In the beginning of its discussion, the court first stated what had been the position of a married woman before the enactment of the Code of 1860, for the purpose of ascertaining the subject-matter and effect of the legislation. The court said that before the legislation of 1860 it was well settled law that a married woman, in the contemplation of a court of equity, occupied the position of a *feme sole*, in respect of her separate estate; and where the deed or instrument creating the separate estate contained no limitation nor restriction on the power of disposition, she was at liberty to dispose of it as a *feme sole*, without the assent or concurrence of either her husband or trustee. But, in case the instrument prescribed a particular mode of alienation or appointment,

that mode was regarded as a negation of all others, and was required to be pursued. After using this language and quoting in its support from *Cooke v. Husbands, supra,* the court then contrasted the subsisting equitable estate of the wife, which arose in equity when a trust in property was created by deed or will for the sole and separate use of a married woman, with the statutory separate estate, in these terms: "In the adoption of the provision of the Code, the separate estate, which before that time was the mere creature of a Court of Equity, and not recognized at law, was made a legal limitation or estate, as to all property acquired by a married woman in the modes designated in the statute referred to; and the right and power of disposition, other than by way of devise, was from that time required to be exercised with the concurrence of her husband."

As noted by Venable in his *Syllabus of Law of Property* (Brodie Ed.) 40, the language of sections 1 and 2 of article 45 of the Code of 1860 was comprehensive enough to embrace not only property which was held by her generally and not limited to her sole and separate use, but also all property held by her to her sole and separate use, no matter in what mode acquired. And this authority further observed that the language used in *Hall & Hume v. Eccleston, supra,* was ambiguous and was contended by some to support the interpretation that the power of the wife to convey and charge her equitable sole and separate estate was controlled and lessened by legislation, so as to require the concurrence of the husband. The subject-matter of the decision in *Hall & Hume v. Eccleston, supra,* was the statutory separate estate of a married woman. It was a legal estate which was being defined, and it was not necessary to decide, nor does the context support the contention that the court intended to declare, that an equitable estate in a married woman for her sole and separate use, with a power to dispose of it as though she were a *feme sole,* could no longer be created by deed or will, no matter what was the intention of the instrument under which the estate was created.

In view of these considerations and the other recent decisions of the court, *supra,* it is difficult to conclude that the court would step aside from the question before it, and express an opinion on so important a subject-matter in such an indefinite manner. Nor do terms used in article 45 of the Code of 1860 compel the interpretation here ascribed in argument to the decision in *Hall & Hume v. Eccleston, supra.* While the statutory language used is general, and so comprehensive that every estate of a married woman might be construed to be included, yet there is no such irreconcilable conflict between a subsisting equitable sole and separate estate of a married woman, that was cognizable only in a court of equity, and the newly created statutory separate estate of a married woman in all her legal estates and her general equitable estates, as would compel the conclusion that it was the intention of the Legislature to destroy the right of the married woman to act with reference to her equitable sole and separate estate as a *feme sole.* The mandate of the Constitution then in force, that the General Assembly shall pass laws necessary to protect the property of the wife from the debts of the husband during her life, and for securing the same to her issue after her death, makes it all the more probable that the Legislature did not entertain the design to diminish the protection accorded the wife in equity by imposing on her the necessity of having the husband's concurrence in every disposition of her equitable sole and separate estate during their marriage. Const. 1851, art. 3, sec. 38; Const. 1864, art. 3, sec. 42; and compare Const. 1867, art 3, sec. 43. The literal import of general words must be resolved in accordance with the real purpose and intent of the Legislature, which was to create a statutory separate estate in a married woman, and to define and limit her rights and those of her husband in this new estate, and which was not designed to alter prejudicially general principles of equity as to a subsisting equitable sole and separate estate in a married woman.

This view of the effect of article 45 of the Code of 1860

and of the opinion in *Hall & Hume v. Eccleston, supra,* is sustained by Venable, who, after an examination of the cases, expressed the opinion "that no change has been made in the wife's sole and separate estate by the Code." *Venable's Syllabus of Law of Property* (Brodie Ed.), pp. 37-40; *Emerick v. Coakley* (1872), 35 Md. 188, 191. In *Gebb v. Rose* (1874), 40 Md. 387, 392, the grantor, a married woman, who held title since 1856 under a deed which did not convey it to her separate use, attempted to convey title to the property by deed in which her husband did not join. The court, speaking through Judge Alvey, who had written the opinion of the court in *Hall & Hume v. Eccleston, supra,* said: "Holding the estate by this title, Mrs. Wollet, while under the disability of coverture, on the 18th of October, 1871, attempted to convey the property directly to her husband, in trust, without his joinder in the grant. This, it is clear, she was incompetent to do, by any conveyance executed by her alone. The deed of a *feme covert* is, by the common law, simply void; and except as to her separate estate, settled upon her by deed or will, and with respect to which she may be empowered to act as a *feme sole,* she can only convey her property in the manner prescribed by statute. In this State, the manner prescribed for the conveyance of the property of a *feme covert* is by the joint deed of herself and her husband. Code, art 45, sec. 11. * * * The only mode by which a *feme covert* can convey her estate, not held to her separate use, to her husband, except in the execution of a power, is by means of a conveyance to a third person for his use, he joining with his wife in the deed." (As to deed to third party, compare *Brandau v. McCurley,* 124 Md. 243, 247-249, 92 A. 540.

So in *Armstrong v. Kerns* (1884), 61 Md. 364, Judge Alvey, again writing the opinion of the court, and speaking with reference to sections 2 and 11 of article 45 of the Code, declares the law in these unmistakable terms: "The latter section invests her with power to convey her real or personal property, if her husband joins in the

conveyance, whether the conveyance be absolute or by way of mortgage, etc. But it has never been considered that this statutory mode of conveyance by the wife, jointly with her husband, was exclusive of all other modes of conveyance that might be prescribed or authorized by the grantor, donor, or settler of property upon the wife, or that it rendered the wife incapable of executing a power. On the contrary, the object of the statute was rather to enlarge than to restrict her disposing power over the property acquired by her; and the modes and powers of disposition previously existing were in no manner intended to be denied or restrained. When a married woman acquires property in any of the modes prescribed by the statute, without any declaration or limitation to her separate use, and without any special mode or power of disposition annexed to the estate, the statutory use attaches, and the statutory mode of disposition exclusively applies and controls. But where property is conveyed or settled upon a *feme covert* to her separate use, and a specific mode of alienation or appointment is provided in the instrument creating the estate, that mode must be pursued, as it operates as a negation of any other, and is a paramount law governing and controlling the contract in relation to the property. In such case, however, if there be no specific mode of disposition prescribed, or no restriction thereon, the *feme covert* may act in reference to the disposition of the estate as a *feme sole*. *Cooke v. Husbands,* 11 Md. 492; *Buchanan v. Turner,* 26 Md. 1, 5." *Wingert v. Gordon* (1886), 66 Md. 106, 6 A. 581; *Brown v. MacGill* (1898), 87 Md. 161, 169, 170, 39 A. 613. See *Jaworski v. Wisniewski,* 149 Md. 109, 116, 117, 131 A. 40.

The position of the vendees clearly appears to be untenable, unless chapter 457 of the Acts of 1898, with its amendatory and supplementary Acts of 1900, ch. 195, ch. 693; Acts of 1904, ch. 151; Acts of 1916, ch. 325, would justify their contention that these acts, which now constitute articles 45 and 46 of the Code, have abolished the equitable sole and separate estate of a married

woman. Chapter 457 of the Acts of 1898 repealed and re-enacted with amendments article 45 of the Code of Public General Laws as it was then enacted. The primary purpose of the Act of 1898, and its amendments, was to change the dower rights of the wife and the tenancy by the curtesy of the husband, whether the land was held by legal or equitable title. The statute, with its complementary act in regard to the interest of the surviving husband and wife in the personal estate of the spouse who had died (Acts 1898, ch. 331), practically made the marital rights of the husband and wife the same so far as respects their property. *Collins v. Collins*, 98 Md. 473, 480, 57 A. 597.

The sections which had for their object the protection of the property of the wife from the debts of the husband, and the grant of the right to use and enjoy, within prescribed limitations, the property as a *feme sole*, were practically unchanged. Section 1 of article 45 of the Code was so comprehensive in its terms that nothing more was embraced by sections 1 and 4 of the Act of 1898, except that the acquisitions after "marriage * * * by her own skill, labor or personal exertions, or in any other manner" were added. The right of married women to hold all their property for their separate use was no enlargement of subject-matter; but the existing power to devise this property as fully as if she were a *feme sole*, and to convey the same by a joint deed with her husband, was somewhat restricted by the limitation that her power of disposition was confined to those instruments only by which husbands disposed of their property. On the other hand, the original privilege of the wife to name a trustee of her estate by deed in which the husband joined was amended so as to confer upon her the privilege to do it by her sole deed. This last-mentioned modification was of slight practical importance, because in both the original and amended statute the wife was granted the privilege of having a trustee appointed by a court of equity in a decree by which the

uses and trusts for which the trustee would hold the property should be declared.

So, neither from the substance nor from the language of the Act of 1898, and its amendments, does there appear a clear legislative intent to include the equitable sole and separate estate of a married woman during her coverture. The fact that the court has expressly held that the married woman's equitable sole and separate estate was not within the meaning of the statutory law before the passage of the Act of 1898 is of persuasive force that this estate is not within the statutory law subsequently enacted in substantially the same terms, with respect to the property designed to be included, as the preceding legislation. The married woman's equitable sole and separate estate is the creature of contract or gift, and is governed by the terms and conditions of its creation, while her statutory separate estate has its origin, existence, and quality in legislation.

The decisions of this court and the opinion of commentators on the subject support the conclusion that the undivided one-third interest in the property in question was vested in Elizabeth Clarke Gordon during her coverture in an equitable sole and separate estate, and that the trustees appointed, after the wife's declaration of trust, had the power to convey this interest to the vendees. Because of its own decisions, and of their uniform interpretation, before and after the Acts of 1898, by Maryland writers on the subject, as is shown by the law books, the court should not abandon a recognized rule of property. *Supra. Stewart and Carey on Law of Husband and Wife* (1881), arts. 21, 23; *Stewart on Husband and Wife* (1887), par. 216; *Binswanger's Married Women in Maryland* (1903), 13-18; *Harlan, Law of Domestic Relations* (1909), 43, 53, 54; *Frank, Titles to Real and Leasehold Estates* (1912), 65. See *Story's Eq. Juris.* (17th Ed.), sec. 1807 *et seq.; Pomeroy's Eq. Jur.* (4th Ed.), 1098-1105, 1110; *Perry on Trusts* (7th Ed.), sec. 677, p. 1157; *Tiffany on Real Property* (1920), sec. 206; 30 *Corpus Juris,* pars. 424, 425, p. 795, par. 427, pp. 796-

798; *Halsbury's Laws of England,* vol. 28, pp. 37, 38; *Cadematori v. Gauger,* 160 Mo. 352, 61 S. W. 195, 198; *Richardson v. Stodder,* 100 Mass. 528, 530; *Bergland v. Owen,* 48 App. D. C. 26.

After a court of equity had established the doctrine of a sole and separate use in real and personal property of a married woman, it became necessary to endow her, in respect of such sole and separate property, with an independent personal status, and to make her in equity a *feme sole.* The equitable sole and separate estate would have failed in the object of its creation, if the separate use of the wife were not free from the control and interference of the husband; so equity invested her with the rights and powers of a person who is *sui juris,* which is her status during coverture in respect of her equitable sole and separate estate in property by contract or gift. *Taylor v. Meads,* 4 De Gex. J. & S. 597, 603, 604, 46 Eng. Reprint, 1053. The cases of *Whitridge v. Barry,* 42 Md. 140, 151; *Wingert v. Gordon* (1886), 66 Md. 106, 110, 6 A. 581; *Klecka v. Ziegler* (1895), 81 Md. 482, 32 A. 241; *Western Nat. Bank v. National Union Bank* (1900), 91 Md. 613, 621, 46 A. 960; *Snyder v. Jones* (1904), 99 Md. 693, 697, 59 A. 118, have not been found in conflict with the conclusions reached.

For the reasons which have been here expressed, the decree of the chancellor will be affirmed.

*Decree affirmed, with costs.*